[No. 14046-2-II. Division Two. August 20, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. ANNA M. REHAK, *Appellant.*

---

158

*Robert A. Lewis* and *Knapp, O'Dell, Lewis & Hagensen,* for appellant (appointed counsel for appeal).

*Arthur D. Curtis, Prosecuting Attorney,* and *Mark E. Beam, Deputy,* for respondent.

SEINFELD, J. — Anna Rehak was convicted by a jury of the first degree murder of her husband, Dana Rehak, Sr. She appeals, challenging several of the court's evidentiary rulings and jury instructions, and its denial of her motion to dismiss for insufficient evidence of premeditation. We find no error and affirm.

On February 13, 1990, sometime between 11 and 11:30 a.m., Dana Rehak, Sr., was shot three times in the head while seated in the basement family room of his home in rural Clark County. The shots were fired from a .22-caliber pistol. One shot entered the back of his head, a second entered his right temple, and the third went in his right cheek. The first two shots were fatal.

Law enforcement officials responded to the scene after Anna Rehak called 911 and reported that her husband had sustained a gunshot wound. It had snowed the night before and the ground was coated with new snow. The first emergency medical technicians to arrive at the Rehak home had to push aside snow accumulations to open the gate at the end of the driveway. There were no new vehicle tracks in the snow on the driveway.

Mrs. Rehak described the morning events to police officers, stating that she left the house a little before 11 a.m. and crossed the yard to the barn, where she fed her cats. When she returned to the house she discovered her husband lying on the floor of the family room. Mrs. Rehak showed the officers the route she took from the house to the barn and pointed out the shoes she had worn, boots with a distinctive tread. The investigating officer retraced Mrs. Rehak's route,

but did not see any new prints of the size or shape of Mrs. Rehak's boots. In addition, the officer noted that the cement floor of the barn and the soles of Mrs. Rehak's boots were both dry.

Mrs. Rehak permitted a search of her home, the outbuildings and the family vehicles. On February 14, the day after the murder, the officers discovered the murder weapon in the Rehaks' travel trailer, hidden under the mattress of Mrs. Rehak's bed. Testimony from the Rehaks' children confirmed that the gun was at least similar to one that they had seen in Mrs. Rehak's purse at various times in the past few years. The officers also discovered an unpaid GTE telephone bill hidden with the gun. Mrs. Rehak was charged with murder in the first degree for the death of her husband and the case proceeded to trial.

The Rehaks' adult children from separate marriages testified, painting a picture of a stormy and occasionally abusive marriage. Mrs. Rehak had previously threatened to leave her husband, the couple had actually separated a few times and, in the months prior to Mr. Rehak's death, Mrs. Rehak had claimed to be tired of the constant fighting, stating that she "didn't know if she could take it any more." It was not uncommon for Mrs. Rehak to hide items from her husband, including mail and bills.

At the time of Mr. Rehak's death, the Rehaks were delinquent in their payments of various bills, including the mortgage on their house. On February 12, an officer of the mortgage company spoke to the Rehaks about this. Mr. Rehak expressed surprise at the delinquency, assured the mortgage officer that they were not in financial difficulties, and offered to come to the bank the next day to resolve the problem. However, other evidence indicated that the balances in the Rehaks' checking and savings accounts had decreased significantly over the past 2 years.

The defense sought to establish that Mr. Rehak's son, Dana Rehak, Jr., could have been his father's murderer. By way of offer of proof, counsel for the defense presented evidence of father and son quarrels, and of how Dana, Jr.,

might benefit financially if his stepmother were convicted of the murder of his father. An effort was made to establish that Dana, Jr., also, had the opportunity to commit the murder. He knew where the murder weapon was kept and he was absent, without explanation from his work, on the morning of the murder. However, as the defense had no evidence placing Dana, Jr., who lives in Snohomish County, near the murder scene or even near Clark County, the proffered testimony was rejected.

The defense also argued that because the police immediately concluded that Mrs. Rehak was the killer, they failed to pursue other possible suspects. However, the trial court did not allow the cross examination of investigating officers regarding their failure to question certain other possible suspects, persons angry with Mr. Rehak, whose names were provided either by Mrs. Rehak or by anonymous tipsters. The trial court also barred the testimony of a potential third party perpetrator because of lack of foundation, but it did not preclude the defense from attempting to show, if it could, that one or more of the investigating officers decided immediately that Mrs. Rehak was the murderer and failed to consider any other possibilities. Nor did the trial judge prevent the defense from questioning the police about their investigatory techniques in order to cast doubt on the thoroughness of the investigation and on the evidence of Mrs. Rehak's guilt.

At the close of the trial, Mrs. Rehak objected to the jury instruction setting forth the elements of first degree murder, arguing that there was insufficient evidence of premeditation, and asked instead for an instruction on second degree murder.[1] Neither party wanted the jury instructed on second degree murder as a lesser included offense of first degree murder. The trial court determined that there was enough

---

[1]RCW 9A.32.030 sets forth the relevant elements of the crime of murder in the first degree:

"(1) A person is guilty of murder in the first degree when:

"(a) With premeditated intent to cause the death of another person, he causes the death of such person . . .[.]"

evidence to support the first degree murder instruction. The defense also sought an instruction advising the jury that "premeditation may be shown by direct evidence or by *substantial* circumstantial evidence" (italics ours); the trial court rejected the instruction. The jury convicted Mrs. Rehak of murder in the first degree and she appeals the conviction.

■ Mrs. Rehak first argues that she was denied her right to present a defense when the trial court excluded evidence of Dana Rehak, Jr., as a potential suspect. We find no error. A defendant in a criminal case has a constitutional right to present a defense consisting of relevant evidence that is not otherwise inadmissible. *State v. Austin*, 59 Wn. App. 186, 194, 796 P.2d 746 (1990) (citing *Taylor v. Illinois*, 484 U.S. 400, 406-09, 98 L. Ed. 2d 798, 108 S. Ct. 646, 651-53 (1988)). Nonetheless, the admission or refusal of evidence lies largely within the sound discretion of the trial court; its decision will not be reversed on appeal absent an abuse of discretion. *State v. Stubsjoen*, 48 Wn. App. 139, 147, 738 P.2d 306, *review denied*, 108 Wn.2d 1033 (1987). An abuse of discretion exists only where no reasonable person would take the position adopted by the trial court. *State v. Huelett*, 92 Wn.2d 967, 969, 603 P.2d 1258 (1979).

■ Moreover, the constitutional right to present a defense is not unfettered. *State v. Drummer*, 54 Wn. App. 751, 755, 775 P.2d 981 (1989) (citing *Taylor v. Illinois, supra*). Specifically, in a case where the defendant seeks to introduce evidence connecting another person with the crime charged, a proper foundation must be laid.

> Before such testimony can be received there must be such proof of connection with the crime, such a train of facts or circumstances as tend clearly to point out someone besides the accused as the guilty party. . . .

*State v. Downs*, 168 Wash. 664, 667, 13 P.2d 1 (1932), *cited with approval in State v. Mak*, 105 Wn.2d 692, 716, 718 P.2d 407, *cert. denied*, 479 U.S. 955 (1986). *See also Leonard v. Territory*, 2 Wash. Terr. 381, 7 P. 872 (1885) (defense allowed

to argue third party perpetrator theory after offering evidence to show that the third person was near the scene of the crime).

Mrs. Rehak maintains that the facts of her case are similar to those in *Leonard*; Dana, Jr., was unaccounted for on the morning of the murder and had the ability to get from Snohomish County to Clark County in time to commit the crime. She contends that the jury should be allowed to consider evidence implicating a third party perpetrator based on a foundational showing that it was *possible* for the third party to have committed the crime. We decline to adopt such a rule. *Mak* and *Downs* require more. Not only must there be a showing that the third party had the ability to place him- or herself at the scene of the crime, there also must be some step taken by the third party that indicates an intention to act on that ability. Here, the defense offer of proof arguably satisfies the first part of the test. The evidence suggests that Dana, Jr., might have been able to travel to the scene of the murder in Clark County, commit the crime, and then, within the next 3 hours, return the 190 miles to his home in Everett in time for a 2:15 appointment. However, there is no evidence of any intention to act on that ability. The unsupported accusation of Dana, Jr., as the murderer is nothing more than speculation. The trial judge properly excluded the evidence as irrelevant and lacking in foundation. *See State v. Drummer, supra.*

■ Mrs. Rehak also asserts that the trial court erred when it excluded evidence showing the police failure to pursue other potential suspects, and that by doing so the court improperly restricted her ability to cross-examine the officers with respect to their investigation. Again, there was no error. The trial court judge specifically stated that the defense was free to ask questions tending to impeach the State's assertions that the investigation was careful and thorough, and the defense did so. The trial judge also told the defense that it could present any evidence it might have to show police bias. The only evidence actually excluded was

the police handling of a tip regarding an unidentified third party who had made threats against Mr. Rehak. The trial court concluded that the intended purpose of the evidence was not to impeach by showing bias, but rather as substantive evidence — to suggest to the jury that there were other possible perpetrators. For the same reasons discussed above and set forth in *State v. Mak, supra,* the evidence of a potential third party perpetrator was properly excluded based on lack of a proper foundation. The defense was not denied the opportunity to present its theory of the case; the judge merely precluded the use of inadmissible evidence.

■■ The defendant next argues that the conviction of first degree murder should be reversed because there is insufficient evidence of one of the elements of the crime: premeditation. This argument is also without merit. Evidence is sufficient if, viewed in the light most favorable to the State, a rational trier of fact could find the elements of the crime beyond a reasonable doubt. *State v. Green,* 94 Wn.2d 216, 616 P.2d 628 (1980). First degree murder includes the element of a premeditated intent to cause the death of another person. RCW 9A.32.030. Premeditation is the mental process of thinking beforehand, deliberation, reflection, weighing or reasoning for a period of time, however short. *State v. Commodore,* 38 Wn. App. 244, 247, 684 P.2d 1364, *review denied,* 103 Wn.2d 1005 (1984). Premeditation can be shown by circumstantial evidence where the inferences drawn by the jury are reasonable and the evidence supporting the jury's verdict is substantial. *State v. Bingham,* 105 Wn.2d 820, 824, 719 P.2d 109 (1986).

In this case, a reasonable trier of fact could find premeditation from the circumstantial evidence. It was reasonable for the jury to infer from the evidence that the killer prepared the gun; crept up behind the victim who was sitting quietly in his chair and not in a confrontational stance; and shot three separate times, twice after the victim had already fallen to the floor. In our view, these facts are sufficient evidence of the element of premeditation.

██ Finally, Mrs. Rehak contends that the trial court erred in not giving her proposed instruction requiring *substantial* circumstantial evidence to support a finding of premeditation. Again, we find no error. The trial court has considerable discretion as to how the instructions to the jury will be worded. *Jensen v. Beaird*, 40 Wn. App. 1, 696 P.2d 612, *review denied*, 103 Wn.2d 1038 (1985). Further, instructions are sufficient if, when considered as a whole, they are readily understood, are not misleading to the ordinary mind, and properly inform the trier of fact of the applicable law. *State v. Rice*, 110 Wn.2d 577, 603, 757 P.2d 889 (1988), *cert. denied*, 491 U.S. 910, 105 L. Ed. 2d 707, 109 S. Ct. 3200 (1989). Although a trial court should consider proposed instructions, it is under no obligation to give misleading instructions. *State v. Brobak*, 47 Wn. App. 488, 493, 736 P.2d 288, *review denied*, 108 Wn.2d 1034 (1987).

█ Here, as the trial court correctly noted, the cases cited by the defense which describe the State's burden as "substantial" when it attempts to prove first degree murder by circumstantial evidence deal with the burden of producing evidence, not of persuasion. When an appellate court reviews a first degree murder conviction to determine whether there was sufficient circumstantial evidence to submit the matter to the jury, the appellate court need not be convinced beyond a reasonable doubt. It merely must be satisfied that there is substantial evidence. *See, e.g., State v. Bingham, supra; State v. Luoma*, 88 Wn.2d 28, 558 P.2d 756 (1977). The instruction proposed by the defense suggests that the jury could convict, when looking at circumstantial evidence, based on evidence less than proof beyond a reasonable doubt. Such an instruction would be a misstatement of the law. The WPIC instruction used by the court in this case properly informed the jury of the applicable law and of the State's burden of proof. The trial court did not abuse its discretion by refusing to give the defendant's proposed instruction.

The judgment and sentence are affirmed.

PETRICH, C.J., and ALEXANDER, J., concur.

Review denied at 120 Wn.2d 1022 (1993).