# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| Respondent, | ) | No. 67525-7-I |
| v. | ) | UNPUBLISHED OPINION |
| ALVIN RAY BURNS JR., | ) | |
| Appellant. | ) | FILED: March 11, 2013 |

DWYER, J. — Alvin Burns was convicted of possession of cocaine with intent to deliver following an incident in which a security guard at the community college that Burns attended noticed a plastic bag containing a large amount of a suspected controlled substance in Burns's jacket pocket. On appeal, Burns asserts that the trial court abused its discretion by excluding the testimony of a proposed defense witness. However, because the testimony of the proposed witness would have been both speculative and cumulative, the trial court properly exercised its discretion in reaching its decision. Moreover, Burns was not, as he contends, denied his constitutional right to present a defense due to the exclusion of that testimony. Burns is correct, however, and the State concedes, that his offender score was miscalculated at sentencing. Thus, although we affirm Burns's conviction, we remand the cause to the superior court for correction of the miscalculated offender score on the judgment and sentence form.

I

On January 13, 2010, Frederick Creek, the director of campus safety at Green River Community College, was summoned to the scene of an on-campus medical emergency. Creek was told that Burns, a student at the college, was having chest pains. He found Burns "bent over at the waist," "sweating profusely," and "in a lot of pain." Burns reported to Creek that he was very hot and was having lower back pain. Burns's pain was "[v]ery extreme"—so extreme that he was "screaming" in pain. Creek telephoned 911.

When medics arrived at the scene, they tried to remove Burns's jacket. Creek, who was assisting the medics, would later testify that Burns was "resistant" to having his jacket removed. However, when the medics informed Creek that they had to remove his jacket in order to assess his condition, Burns then allowed them to do so. The medics handed the jacket to Creek, whose responsibility it was to secure a student's property in such an emergency to ensure that it was not lost during transport to the hospital. When Creek was handed the jacket, he looked down and saw, in the right pocket of the jacket, what appeared to be a controlled substance "balled-up" in plastic wrap. The plastic wrap contained a "large quantity" of the substance, which consisted of individual rocks that were "off-white" in color.

Concerned that the substance could be related to Burns's medical emergency, Creek informed the medics. Burns then saw the bag and inquired, "what's that?" Creek did not believe that Burns was "genuinely surprised"; rather, it seemed to Creek that Burns was simply "trying to act that way." Despite the

fact that Burns still appeared to be in extreme pain, he stood up, removed the medical equipment from his body, and began to walk to the parking lot of the building. Creek notified the police of the suspected controlled substance and followed Burns to the parking lot. According to Creek, Burns asked him not to call the police and told him that he "was ruining [Burns's] life." Due to the pain, Burns sat down on the sidewalk.

Officer Michael Burris then arrived on the scene. Officer Burris found Burns to be in "extreme medical distress," "bent over," "sweating profusely," and "crying out in pain." Both Creek and Officer Burris overheard Burns having a cell phone conversation while he sat on the sidewalk. Creek would later testify that Burns told the person with whom he was speaking that "they found my work" in the jacket. Officer Burris would similarly testify that Burns had said that "they found my work" and "I'm going to jail." Burns was transported to the hospital, and Officer Burris took possession of the jacket and the suspected controlled substance.

Officer Burris later went to the hospital to see Burns. He advised Burns of his rights and, although Burns initially said he "wasn't sure" if he understood his rights, he told Officer Burris a moment later that he did. According to Officer Burris, Burns identified the substance inside the plastic wrap as "crack." Officer Burris then began to leave, but Burns asked him to stay, telling Officer Burris that he "wanted to tell me some things." According to Officer Burris, Burns told him that he sold drugs, that he was not proud that he sold drugs, and that "when he was employed, he intended to stop selling drugs." He also told the officer that

- 3 -

the "crack" was worth "eight to nine hundred dollars."

The State charged Burns with violation of the Uniform Controlled Substances Act, chapter 69.50 RCW, committed by possessing with intent to manufacture or deliver cocaine. Officer Burris testified at trial that the substance recovered from Burns's jacket was individually wrapped in small pieces of plastic, as if prepackaged for sale. He further testified that the amount of cocaine, 15.7 grams, was not consistent with personal use. Donna Wilson, a forensic chemist at the Washington State Patrol Crime Lab, testified that tests had confirmed the substance to be cocaine. Wilson also testified that the cocaine was wrapped in at least 48 "plastic wrappers."

The jury convicted Burns as charged. Burns was sentenced to 60 months of incarceration and 120 months of community custody.

He appeals.

II

Burns contends that the trial court abused its discretion in excluding the testimony of Amber Clifton, a proposed defense witness. Burns further contends that, as a result of the exclusion of Clifton's testimony, he was denied his constitutional right to present a meaningful defense. On both accounts, we disagree.

"[W]e will not disturb a trial court's rulings on a motion in limine or the admissibility of evidence absent an abuse of the court's discretion." State v. Powell, 124 Wn.2d 244, 258, 893 P.2d 615 (1995). "When a trial court's exercise of its discretion is manifestly unreasonable or based upon untenable grounds or

reasons, an abuse of discretion exists." Powell, 126 Wn.2d at 258.

"A defendant in a criminal case has a constitutional right to present a defense 'consisting of relevant evidence that is not otherwise inadmissible.'" State v. Mee Hui Kim, 134 Wn. App. 27, 41, 139 P.3d 354 (2006) (quoting State v. Rehak, 67 Wn. App. 157, 162, 834 P.2d 651 (1992)). However, "a criminal defendant has no constitutional right to have irrelevant evidence admitted in his or her defense." State v. Hudlow, 99 Wn.2d 1, 15, 659 P.2d 514 (1983). Evidence is relevant where it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence Rule (ER) 401. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." ER 403. Moreover, a trial court properly excludes evidence that is "remote, vague, speculative, or argumentative because otherwise 'all manner of argumentative and speculative evidence will be adduced,' greatly confusing the issue and delaying the trial." State v. Kilgore, 107 Wn. App. 160, 185, 26 P.3d 308 (2001) (quoting State v. Jones, 67 Wn.2d 506, 512, 408 P.2d 247 (1965)), aff'd on other grounds, 147 Wn.2d 288, 53 P.3d 974 (2002); see also Mee Hui Kim, 134 Wn. App. at 42; State v. Donahue, 105 Wn. App. 67, 79, 18 P.3d 608 (2001).

Here, the State moved in limine to exclude the testimony of proposed defense witness Clifton. In moving to exclude Clifton's testimony, the State

- 5 -

contended that the proposed testimony was based upon inadmissible hearsay. Clifton was expected to testify that, the night before cocaine was found in Burns's jacket, her boyfriend had borrowed Burns's jacket and that, upon later learning that police had found the cocaine, had stated that he had "left his 'dope'" in the jacket. The State also asserted that, absent this inadmissible hearsay, Clifton's testimony would not be helpful to the trier of fact because Clifton had not inspected the pocket of Burns's jacket either before or after her boyfriend had borrowed it.

Conceding that Clifton could not properly testify regarding her boyfriend's statement, defense counsel argued that Clifton could testify that she observed her boyfriend, Michael Clark, borrow Burns's jacket the evening before the suspected controlled substance was discovered in the jacket pocket. Further, defense counsel argued, Clifton could testify that Burns had already left to go to school when she and Clark awoke the next morning. The State asserted that the anticipated testimony was not relevant because Clifton could not testify as to the contents of the jacket pocket either before or after Clark borrowed Burns's jacket. The trial court excluded Clifton's testimony, explaining that, because Clifton had no knowledge of the contents of the pocket, her testimony would be "purely speculative."

The State thereafter moved to exclude the testimony of Vernice McAllister, Burns's former girl friend with whom he lived at the time of the alleged offense. McAllister was expected to testify that Burns's friend had borrowed his jacket the night before the incident. She was expected to further testify that she had

- 6 -

checked the pockets in Burns's jacket earlier that evening and that they contained only receipts and his keys. The State argued that McAllister could only speculate as to the contents of the jacket pockets between that evening and the next day when the police recovered the suspected controlled substance. The trial court, however, denied the State's request to exclude McAllister's testimony.

At trial, McAllister testified that, because she was concerned that Burns "was cheating" on her, she would often check his pockets and backpack for evidence of that behavior. According to McAllister, when she checked Burns's jacket pockets the evening before the cocaine was recovered by police, there was no cocaine in his pockets. Instead, according to McAllister, she found only bank receipts, keys, and Burns's cell phone. McAllister also testified that Burns's friend had borrowed his jacket the night before the cocaine was discovered. Burns similarly testified at trial that his friend Mike Clark had borrowed the jacket that night and that Burns was asleep by the time that Clark returned.

Burns contends that the trial court abused its discretion by excluding Clifton's testimony that her boyfriend, Michael Clark, had borrowed Burns's jacket the night before the cocaine was recovered by police. However, the trial court acted well within its discretion in determining that, because Clifton had no knowledge of the contents of the jacket pockets, her testimony would be merely speculative. See Kilgore, 107 Wn. App. at 185 (recognizing that a trial court properly excludes speculative evidence). Moreover, both McAllister and Burns testified that Clark had borrowed Burns's jacket. McAllister additionally testified regarding the contents of the jacket pockets before Burns lent the jacket to his

-7-

friend. Thus, the minimal probative value of Clifton's testimony that Clark had borrowed the jacket was outweighed by the cumulative nature of that evidence. See ER 403. "The additional testimony requested here would have been merely corroborative, and there has been no showing of abuse of discretion." State v. McReynolds, 104 Wn. App. 560, 576-77 n.7, 17 P.3d 608 (2000) (affirming the trial court's exclusion of testimony of the defendant's attorney where the defendant proffered that same testimony). Finally, because both McAllister and Burns testified that Clark had borrowed the jacket, Burns was not precluded from presenting his defense that he had no knowledge of the cocaine in his jacket pocket.

Because Clifton's testimony would have been both speculative and cumulative, the trial court did not abuse its discretion in excluding that testimony. Moreover, because Burns and McAllister presented that same testimony, Burns was not denied his constitutional right to present a defense.[1]

III

Burns additionally contends, and the State concedes, that the trial court imposed sentence based upon a miscalculated offender score. At the time of sentencing, Burns had seven prior convictions, each counting as one point in calculating his offender score. The judgment and sentence, however, incorrectly

---

[1] In his statement of additional grounds, Burns asserts multiple additional contentions, including (1) that his jacket was unlawfully seized and searched by Creek; (2) that the trial court erred by excluding from evidence the jacket itself; (3) that the trial court failed to hold a CrR 3.5 hearing; (4) that he received ineffective assistance of counsel for numerous reasons; (5) that the prosecutor committed misconduct by not investigating whether the cocaine belonged to someone other than Burns; and (6) that the trial court abused its discretion by denying Burns's request for removal of his trial counsel due to ineffective assistance. After a thorough review of the record, we determine that Burns's contentions do not warrant appellate relief.

shows Burns's offender score as 8, rather than 7. Despite this error, Burns's standard range sentence remains 60 months to 120 months of incarceration. See RCW 9.94A.517. Nevertheless, we remand to the sentencing court for correction of this error.[2]

Burns's conviction is affirmed. The case is remanded to the sentencing court for correction of the miscalculated offender score.

We concur:

---

[2] The State argued at the sentencing hearing that Burns's offender score was 8. Thus, it appears that the trial court was misinformed regarding the offender score upon sentencing. However, because the court sentenced Burns to 60 months incarceration, which is the low end of the standard range whether Burns's offender score was calculated as 7 or 8, Burns was not aggrieved by the miscalculation. Thus, although the scrivener's error must be corrected, an additional sentencing hearing is not necessary.