# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

STATE OF WASHINGTON,

      Respondent,

      v.

E.B.,
d.o.b. 05/21/94,

      Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

No. 68595-3-I

UNPUBLISHED OPINION

FILED: April 29, 2013

2013 APR 29 AM 8:32
COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

VERELLEN, J. — E.B. appeals his juvenile adjudication of rape of a child in the second degree, arguing the trial court deprived him of his right to present a defense by excluding testimony intended to contradict the victim's account of a conversation that took place immediately before the rape. We disagree and affirm.

## FACTS

In May 2010, 15-year-old E.B. spent the night at the apartment of his friend K.'s family. K. and her 12-year-old sister D. watched movies with E.B. after the rest of the family went to bed. Around 2:30 a.m., K. went to bed, leaving E.B. and D. in the living room watching a movie. E.B. left the next day.

Weeks later, D. told K. that E.B. had touched her inappropriately the night he stayed at their apartment. When D. later told her parents, they called the police. A Kirkland police officer interviewed D. on July 16, 2010. A Harborview nurse interviewed

and examined D. on July 26 and a Kirkland police detective interviewed her on August 3. At each interview, D. made additional new allegations of sexual contact, describing acts and reporting injuries she had denied or not disclosed in past reports.

In September 2011, the State charged E.B. with rape of a child in the second degree. The State later amended the information to add an alternative charge of child molestation in the second degree. During the fact finding hearing in March 2012, the prosecutor asked D. about her interview with defense counsel shortly before the hearing where she reported for the first time that E.B. talked to her about a movie entitled "No Strings Attached." The following exchange occurred:

> Q: What is "No Strings Attached"?
>
> A: It's basically a movie where these two—the main plot is these two friends or people are—do stuff, have sex, feel each other up, and they don't tell anyone, and they're not in a relationship, it's just friends with benefits kind of thing.
>
> Q: And when did that come up?
>
> A: Um, that came up right before he asked me to straddle him.
>
> COURT: I'm sorry, right before what?
>
> A: Right before he asked me to sit on his lap.
>
> Q: And what was the context?
>
> A: It was just have you ever heard of the movie "No Strings Attached"? I was like, yes, I have. And he's like, the situation's probably going to turn out similar to that. I was like oh, and then he said sit on my lap.[1]

Defense counsel later returned to the subject, asking D. if she had seen the movie, and the following occurred:

---

[1] Report of Proceedings (RP) (Mar. 19, 2012) at 130.

A:    I haven't seen it.  I have heard about it though.

Q:    Heard about it?

A:    I've seen the most recent one.

Q:    What does that mean?

A:    There's been different versions of that movie.

Q:    So back in 2010, you were familiar with this movie?

A:    Yes.[2]

After the State rested, defense counsel stated she intended to call her investigator as an impeachment witness to testify about the different plots and release dates of two movies entitled "No Strings Attached."  Responding to the State's characterization of the issue as a collateral matter, defense counsel argued:

> Well, I think it goes to a critical issue.  The witness, [D.], testified that [E.B.] said back in May of 2010, "This is kind of like a date," and kind of like this movie, and when I asked and I think the State asked about the content of the movie, she talked about sex between friends, friends with benefits, etc.  There's a movie entitled "No Strings Attached" [in] which that is the topic.  It came out in 2011.  From preliminary conversations with [the investigator] , the movie in 2009 has a different subject matter.  And I hesitate to say exactly, . . . but I believe it's an entirely different content, which wouldn't match up with what [E.B.] allegedly said in 2010, if the previous version of the movie has a completely different subject matter than the 2011 movie, which I think we all would agree has the subject matter of what the witness testified to.[3]

The trial court did not allow the investigator's testimony, observing that it would be impeachment on a collateral matter, was confusing, and was "not worth the time."[4]

---

[2] RP (Mar. 20, 2012) at 37-38.

[3] Id. at 130-31.

[4] Id. at 132.

Following the adjudication hearing, the trial court entered findings of fact and conclusions of law. The court found D.'s testimony credible, concluded that the State had proved beyond a reasonable doubt the elements of rape of a child in the second degree, and accordingly, determined E.B. to be guilty as charged.

E.B. appeals.

## DISCUSSION

E.B. contends that the trial court denied his constitutional right to present a defense by excluding evidence demonstrating that "the conversation about "No Strings Attached," the supposed immediate prelude to rape, did not and could not have occurred."[5]

In reviewing whether the trial court's exclusion of evidence denied a defendant the right to present a defense, the ultimate question is whether the trial court erred in its evidentiary ruling. We review a trial court's ruling on the admissibility of evidence for abuse of discretion.[6] "When a trial court's exercise of its discretion is manifestly unreasonable or based upon untenable grounds or reasons, an abuse of discretion exists."[7]

"A defendant in a criminal case has a constitutional right to present a defense 'consisting of relevant evidence that is not otherwise inadmissible.'"[8] However, "a criminal defendant has no constitutional right to have irrelevant evidence admitted in his

---

[5] Appellant's Br. at 11.

[6] State v. Darden, 145 Wn.2d 612, 619, 41 P.3d 1189 (2002).

[7] State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995).

[8] State v. Mee Hui Kim, 134 Wn. App. 27, 41, 139 P.3d 354 (2006) (quoting State v. Rehak, 67 Wn. App. 157, 162, 834 P.2d 651 (1992)).

4

or her defense."[9] Evidence is relevant where it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[10] "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[11]

Moreover, "a witness cannot be impeached upon matters collateral to the principle issues being tried."[12] Our Supreme Court has "stated the test of collateralness to be: Could the fact, as to which error is predicated, have been shown in evidence for any purpose independently of the contradiction?"[13]

Here, E.B. fails to argue or establish that the investigator's testimony about the plot lines and release dates of the movies could have been admitted for any other purpose independent of the contradiction of D.'s testimony. Instead, he argues that "D. herself made the film an integral element of her rape allegation."[14] But the State was not required to prove that E.B. made any particular statement in order to prove the rape charge, and E.B. does not challenge the sufficiency of the evidence supporting the charge. And contrary to E.B.'s claim, D.'s testimony regarding the movie was limited to

---

[9] State v. Hudlow, 99 Wn.2d 1, 15, 659 P.2d 514 (1983).

[10] ER 401.

[11] ER 403.

[12] State v. Oswalt, 62 Wn.2d 118, 120, 381 P.2d 617 (1963).

[13] Id. at 121.

[14] Reply Br. of Appellant at 1.

a brief description of the plot during direct examination and D.'s admission during cross-examination that there were different versions of the movie and she had seen only "the most recent one."[15]

We also disagree with E.B.'s argument that "there is nothing confusing about the fact the movie D. claims was used as a prelude to rape did not exist at the time."[16] Our review of the record reveals that defense counsel was not completely clear about the substance of the proposed testimony or its relevance to any particular fact of consequence to the charge beyond its potential to contradict D.'s testimony. Given the lack of a clear and precise offer of proof, the impeachment value was limited. The trial court did not abuse its discretion by determining that the investigator's testimony would confuse the issues and be a waste of time. On this record, E.B. fails to demonstrate a denial of his right to present a defense.

In a pro se statement of additional grounds for review, E.B. challenges the trial court's findings that (1) D.'s testimony was credible; and (2) E.B.'s statements on Facebook indicate "he was talking about something other than a kiss."[17] He argues that D.'s three official statements were contradictory, she admitted to a lie, and the nurse testified that her report of symptoms was unusual. He also claims the trial court made improper assumptions about the meaning of the Facebook messages and erroneously admitted a Facebook conversation despite "proof that it never took place."[18] But the trier of fact resolves conflicting testimony, evaluates the credibility of witnesses, and

---

[15] RP (Mar. 20, 2012) at 37.

[16] Reply Brief of Appellant at 1.

[17] Statement of Additional Grounds for Review at 1.

6

generally weighs the persuasiveness of the evidence.[19] Regarding the Facebook conversation, our review of the record reveals that the trial court considered testimony and exhibits referring to several Facebook conversations and specifically found that one conversation could not be admitted as a written exhibit because the State did not offer a written record. Because E.B. has not informed this court of the specific conversation he contends was improperly admitted, we cannot review this claim.[20]

    Affirmed.

WE CONCUR:

---

[18] Statement of Additional Grounds for Review at 1.

[19] State v. Walton, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992).

[20] RAP 10.10(c) (an appellate court will not consider an argument made in a statement of additional grounds for review if it does not inform the court of the nature and occurrence of the alleged errors).