

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 69307-7-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| ANTWAN DOMINIQUE RECHE, | ) | |
| | ) | |
| Appellant. | ) | FILED: February 10, 2014 |

SCHINDLER, J. — A jury convicted Antwan Dominique Reche of robbery in the second degree, hit and run of an attended vehicle, reckless endangerment, and possession of a stolen vehicle. Reche seeks reversal, arguing exclusion of police car dashboard camera recordings violated his right to present his defense of voluntary intoxication. Reche also argues the convictions for robbery in the second degree and possession of a stolen vehicle violate double jeopardy. We affirm but remand to vacate the possession of a stolen vehicle conviction.

## FACTS

On November 17, 2011, Antwan Dominique Reche was participating in the "Occupy Seattle" protest and living in a tent near Seattle Central Community College. Reche testified he had been using methamphetamine for about six months. According

to Reche, he had not slept "at all" for a week and a half before November 17. Reche admitted using methamphetamine on November 17.

At around 9:00 p.m. that night, Seattle Central Community College student Vanessa McGough walked to her car after anatomy class. McGough's car was parked on Boylston Avenue at East Howell Street. A few street lights illuminated the area. McGough said she was still talking with her fiancé on her cell phone when she reached the car and noticed someone standing behind her. Frightened, McGough turned around and saw a man, later identified as Antwan Dominique Reche, "holding his left-hand side, obviously holding an object under his shirt." Reche told McGough to put the car keys and cell phone on the ground and step away from the car. McGough put her keys and cell phone on the ground and stepped back approximately 10 feet.

After Reche picked up the car keys and the cell phone, McGough asked if she could retrieve her backpack from the back seat. Reche allowed her to take the backpack out of the car. Reche then placed the cell phone on top of the car parked behind McGough's car and told her not to call the police for 10 or 15 minutes.

McGough said that Reche got into her car and turned on the stereo. But because Reche did not immediately drive away, McGough did not retrieve her cell phone. Instead, McGough started walking northbound on Boylston and flagged down a car. The driver Carloyn Kitner let McGough use her cell phone to call 911. Meanwhile, McGough said she watched as Reche pulled her car out of the parking spot without "any difficulty," but then "hit the gas and started, like, fishtailing. He was driving very radically and went south on Boylston until I couldn't see him anymore."

When Reche reached the intersection of Boylston and Pine Street, he made a wide turn into the lane of oncoming traffic on Pine, crashed into a gray sedan, accelerated, and then hit three other parked vehicles. A block later, Reche got out of the car and began running down Pine Street.

Martine Saphiloff, the head of security at the bar "Our Place," watched Reche hit the gray sedan and the parked cars. Saphiloff and her coworker James Joseph chased after Reche. Joseph tackled Reche to the ground. Saphiloff said that Reche began yelling, " 'I want to go see my babies. I want to go see my babies,' " and appeared to go in and out of consciousness. Joseph restrained Reche until the police arrived.

Seattle Police Department Officer Brian Blase said that when he handcuffed Reche, Reche began to convulse as if having a seizure. Officer Blase said that Reche was extremely upset, screaming, moaning, and yelling. Paramedics strapped Reche to a backboard and took him to Harborview Medical Center.

The State charged Reche with robbery in the second degree, possession of a stolen vehicle, hit and run of an attended vehicle, hit and run of an unattended vehicle, and reckless endangerment.

A number of witnesses testified during the five-day jury trial including McGough, Saphiloff, Joseph, Officer Blase, Officer Eric Michl, forensic toxicologist Sarah Swenson, and Reche. The defense theory was that Reche could not form the intent to commit the charged crimes because of his use of methamphetamine.

McGough testified that she did not believe Reche was intoxicated or inebriated when he took her car. But McGough said that when Reche was arrested, his demeanor was very different. McGough testified that Reche "was combative, fighting with the

police and the firemen that were trying to hold him down or put him on the gurney."

Other witnesses also testified about his erratic behavior when he was arrested. Saphiloff testified that after Joseph tackled Reche to the ground, Reche "kind of, like, passed out. . . . [H]e was in and out of consciousness. We weren't sure if he was playing 'possum. . . . [H]e'd pop into consciousness," saying, " 'I just got to go see my babies.' " Joseph testified that his "original assessment is that [Reche] was sober" but "[w]hen the police got there, I assumed that there was a drug involved. . . . It's not normal . . . to see people thrashing around like that. It was almost involuntary. . . . Muscle spasms along with the kicking and the screaming and yelling."

Officer Blase described Reche's muscle spasms and thrashing as involuntary, as if he were having a seizure. Officer Blase testified that after placing Reche in handcuffs, he was extremely "agitated."

> [Reche] was in handcuffs, and he was very agitated. . . . He was kicking at the firefighters, screaming, yelling for us to let him go, ranting about - - he was part of the Occupy Seattle camp, so all of his friends around were also part of that.
> So a lot - - he was saying a lot of things about working for the system and the man and how he shouldn't be. It didn't make a lot of sense. He was extremely upset.

Washington State Patrol Toxicology Laboratory forensic toxicologist Sarah Swenson testified that methamphetamine can cause euphoria, rapid muscle movements, hallucinations, paranoia, and at high doses, psychosis. Swenson said that the blood taken from Reche tested positive for .32 milligrams of methamphetamine per liter of blood. Swenson testified that "[a] normal therapeutic dose is about .02 to .2 milligrams per liter."[1]

---

[1] The blood test also showed that Reche used marijuana at some point three or more hours before the blood test.

Officer Eric Michl has an expertise in drug recognition and was present at the hospital. Officer Michl testified that Reche appeared to be in a deep sleep as a result of drug use. Officer Michl said Reche did not wake up when he tried to talk to him or when the nurses drew his blood. Officer Michl testified that methamphetamine can cause hallucinations and psychosis, and that methamphetamine users often experience paranoia.

At the conclusion of the State's case in chief, the defense moved to admit excerpts from two police car dashboard camera videos. The defense argued the audio of Reche screaming and yelling during his arrest provided additional support for his defense that he was so intoxicated that he could not form the intent to commit the charged crimes. The court reviewed the videotapes and denied the motion to admit excerpts from the two police car dashboard camera videos. The court ruled that under ER 403, any probative value was outweighed by prejudice because the videos were confusing and not helpful to the jury.

Reche testified that in November 2011, he was homeless and using methamphetamine daily. Reche said that on November 17, he had not slept for over a week. After using methamphetamine that morning, Reche said that he could remember only "[b]its and pieces" of what happened that day. Reche testified that after taking the methamphetamine, he "blacked out" and his next memory was being in a backyard somewhere in Capitol Hill. Reche said it was dark outside, he believed that the "FBI [(Federal Bureau of Investigation) was] following me," and he had to "get away."

Reche said that his next memory from that night was crouching down behind a car and seeing a woman walk up to the car. Reche testified that he walked over to the

driver's side of the car and the woman looked shocked, but that she told him he could take her car. Reche said that he did not remember telling the woman to drop her keys but admitted taking the keys to the car because he had to get away from the FBI. Reche testified he asked the woman not to call the police because "I know if she calls the cops, the FBI is going to pick up on that and go, like, there he is."

Reche remembered getting in the car and turning on the stereo. Reche said after seeing headlights behind him, he sped off because he thought that the FBI found him. After "[t]he car wouldn't drive anymore," he got out and ran. Reche said he ran for "maybe a half a block" before he was "side-tackled" by someone he believed to be "the feds." Reche remembered very little after being tackled and before waking up in the hospital. Reche said that he does not have any children and he did not remember screaming about his babies.

At the request of the defense, the court instructed the jury on the defense of voluntary intoxication. The jury instruction states:

> No act committed by a person while in a state of voluntary intoxication is less criminal by reason of that condition. However, evidence of intoxication may be considered in determining whether the defendant acted or failed to act with intent.

During closing, the defense argued that because of his methamphetamine use, Reche could not form the intent to commit the charged crimes. Defense counsel argued the evidence showed that the toxicologist and the police officers "all agreed if you are not sleeping and using drugs, even alcohol, it's going to affect your body differently," and the level of methamphetamine was "quite a bit above the medicinal level." Defense counsel pointed to the testimony of multiple witnesses who testified that Reche was yelling and screaming and asking to see his babies, and argued methamphetamine

6

made Reche paranoid and delusional. Defense counsel also pointed to the testimony of Joseph and Officer Blase describing Reche's behavior as abnormal.

> We have witnesses . . . saying, "I heard the rambling. I heard the screaming.["] We heard a lot of talk about Mr. Reche screaming for his ["]babies."
> Mr. Reche has no children. He has no babies. Was this a hallucination? A delusion? Probably. That would be consistent with methamphetamine use.

The jury found Reche not guilty of hit and run of an unattended vehicle. The jury found Reche guilty of robbery in the second degree, possession of a stolen vehicle, hit and run of an attended vehicle, and reckless endangerment. The court sentenced Reche to 63 months on the robbery conviction and a concurrent nine-month sentence for possession of a stolen vehicle.

## ANALYSIS

Reche contends exclusion of the police car dashboard camera video recordings violated his right to present a defense. The record does not support his argument

A defendant in a criminal case has a constitutional right to present a defense. State v. Mee Hui Kim, 134 Wn. App. 27, 41, 139 P.3d 354 (2006) (citing State v. Rehak, 67 Wn. App. 157, 162, 834 P.2d 651 (1992)). But a defendant's constitutional right to present evidence is not unfettered. A defendant does not have a right to introduce irrelevant or inadmissible evidence. Rehak, 67 Wn. App. at 162; State v. Hudlow, 99 Wn.2d 1, 15, 659 P.2d 514 (1983). Evidence is relevant where it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. Under ER 403, the court may exclude relevant evidence if the probative value is substantially outweighed by "the danger of unfair prejudice, confusion of the issues, or misleading the

jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

We review the decision to exclude evidence for abuse of discretion. State v. Posey, 161 Wn.2d 638, 648, 167 P.3d 560 (2007). A trial court abuses its discretion when it bases its decision on untenable grounds or reasons. State v. Nguyen, 131 Wn. App. 815, 819, 129 P.3d 821 (2006). An abuse of discretion occurs only when no reasonable person would take the view adopted by the trial court. State v. Atsbeha, 142 Wn.2d 904, 913-14, 16 P.3d 626 (2001). A trial judge, not an appellate court, is in the best position to evaluate the prejudicial effect and relevancy of evidence. Posey, 161 Wn.2d at 648.

The dashboard video camera located in Officer Blase's police car recorded 20 minutes of audio and video during the arrest. Neither the officers nor Reche can be seen on the video. While it is difficult to discern some of the audio, it is possible to hear an officer saying that Reche is "seizing up a little." Reche can also be heard yelling and screaming, "[O]ne fucking percent out of 99!" and, "[H]elp me."

The other video is from a dashboard camera in a police car parked about a block away on Pine Street[2] with 47 minutes of audio and video. Reche is not visible on the video. There is some screaming and yelling in the background, and one officer can be heard saying that Reche is "out of it" and "totally out of control" and "on meth." The audio consists largely of off-camera conversations between officers and unidentified witnesses.

---

[2] The other police car was the car of Officer Kevin Jones and Officer Renick, neither of whom testified.

8

The court reviewed both of the police car dashboard camera videotapes. The court excluded the videotapes under ER 403. The court ruled, "I don't think that the video or its audio portion really should be admitted. I think it's - - I'm going to exclude it under 403. I think it's confusing. I'm not satisfied that it really assists the jury in understanding the facts." The court concluded the videos were confusing and would not help the jury to determine whether Reche could form the intent to commit the crimes charged. The court also concluded that excluding the videos did not prevent Reche from presenting his theory of the case:

> I think the theory of your case is not diminished by this being excluded. I think you can still argue through your client's own testimony and the testimony of the other witnesses what his condition was, the veracity of his statement about babies as indicative of him being delusional.
> I'm troubled in part because the video does not assist the jurors in understanding this. The terrifying sounds of your client on this audio portion of the video is very difficult to weigh in terms of whether it is his medical condition or what's going on at the scene. It's very difficult to know because you are not looking at it. It's troubling to the Court. It's really troubling.
> Frankly, I think it's distracting to the jurors. They need to be focused on whether or not your client could form the intent based upon voluntary intoxication. I think he has testified amply to that fact. Your theory of the case is squarely in front of the jury.

Reche relies on State v. Young, 48 Wn. App. 406, 413, 739 P.2d 1170 (1987), to argue a court may not exclude evidence under ER 403 that is central to the defense of voluntary intoxication. In Young, the State charged the defendant with vehicular homicide. Young argued one of his passengers, Setzer, caused the accident by reaching over and grabbing the steering wheel. Young, 48 Wn. App. at 408. Under ER 403, the trial court excluded the testimony of three witnesses who would have testified that in four separate incidents, "Mr. Setzer had interfered with other drivers' ability to control their vehicles." Young, 48 Wn. App. at 408-10. Young's sole defense, that

Setzer grabbed the wheel, depended almost entirely on the excluded testimony. On appeal, we reversed on the grounds that the evidence was "highly probative and crucial to Mr. Young's theory of defense," and the probative value was not " 'substantially outweighed' by the dangers enumerated in ER 403." Young, 48 Wn. App. at 413.

Here, unlike in Young, the police car dashboard camera videos were neither highly probative nor crucial to the defense. The fact that Reche was screaming and yelling during his arrest was undisputed, and the testimony of many of the other witnesses supported the defense theory that he could not form the intent to commit the charged crimes.[3]

Forensic toxicologist Swenson testified that methamphetamine may cause hallucinations, paranoia, and psychosis, and that Reche's blood tested positive for methamphetamine in an amount above therapeutic levels.

Saphiloff testified that while Joseph was restraining Reche on the ground, Reche "kind of, like, passed out. . . . Then he'd pop into consciousness again [saying,] 'I just got to go see my babies.' " Based on her experience working in nightclubs, Saphiloff testified that Reche appeared to be under the influence of some kind of drug or alcohol.

Joseph testified that when the police arrived, Reche became "irate," "[s]truggling to get away, even more so than he had with me:  Kicking, rolling from side to side." Joseph testified that he "assumed that there was a drug involved" because Reche's behavior "wasn't normal behavior in my line of work to see people thrashing around like

---

[3] Reche also contends that the trial court improperly considered credibility. While the court noted that Reche's behavior was "suspect" because "it's only once he's apprehended that he goes into this convulsion," the record shows that the court based its ruling on prejudice and confusion outweighing the probative value of the evidence under ER 403.

10

that. It was almost involuntary." Joseph explained that Reche had "[m]uscle spasms along with the kicking and the screaming and yelling."

Witness Thomas Bennett testified that Reche was rambling, not making sense, and "making a ruckus" during his arrest. Bennett said that Reche's behavior suggested he was under the influence of drugs.

Officer Blase testified he believed that Reche was under the influence of drugs or mentally ill. Officer Blase testified that when he handcuffed Reche, Reche "started seizing, almost like having a seizure." Officer Blase testified that on the way to the hospital, Reche alternated between screaming and kicking, and passing out into "almost a catatonic state."

Officer Michl testified that Reche was unresponsive at the hospital and experiencing the "downside" phase of methamphetamine use. Officer Michl also testified that methamphetamine users often "ramble and mumble and make nonsensical statements." On cross-examination, Officer Michl said that methamphetamine use often causes paranoid episodes where users "express[ ] a worry or concern that is nonexistent. Most common, 'People are trying to get me' when, in fact, there is nobody trying to get them at all."

Exclusion of the dashboard camera videos did not violate the right to present a defense and the court did not abuse its discretion in excluding the dashboard camera videos.

Reche also asserts the convictions for robbery in the second degree and possession of a stolen vehicle violate double jeopardy. During oral argument, the State

11

conceded the convictions violate double jeopardy. We accept the concession and remand to vacate the possession of a stolen vehicle conviction.

WE CONCUR: