IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46688-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| JUAN CARLOS MADRAZO-MUNOZ, | |
| Appellant. | |

BJORGEN, A.C.J. — A jury returned verdicts finding Juan Carlos Madrazo-Munoz[1] guilty of two counts of first degree child molestation. The jury also returned special verdicts finding that Juan Carlos used his position of trust to facilitate the commission of the crime on both counts. Juan Carlos appeals his convictions, asserting that his due process right to present a defense was violated by the trial court's ruling excluding certain evidence from trial. In his statement of additional grounds for review (SAG), Juan Carlos appears to argue that his defense counsel was ineffective for failing to call certain witnesses and that the prosecutor committed misconduct by charging him with crimes that he did not commit. We affirm.

FACTS

Jenny Thomas was a close friend of Juan Carlos and his wife, Katrina Madrazo. Thomas's children spent a lot of time with the Madrazos' children and would often spend the

---

[1] We refer to the Madrazos by their first names for the sake of clarity. We intend no disrespect.

night at the Madrazos' home. In the winter of 2010, Thomas asked her 10-year-old daughter, JNS,[2] if anyone had touched her inappropriately. JNS told Thomas that Juan Carlos had done so.

After JNS's disclosure, Thomas went to the Madrazos' home late at night and told Katrina about the accusation. After telling Katrina about JNS's accusation, Thomas called the police. Vancouver Patrol Sergeant Jay Alie met Thomas at her home to discuss the allegations. JNS was also present and appeared composed when describing how she came to know the Madrazos, but when JNS began describing the allegations of inappropriate touching by Juan Carlos, "her demeanor changed quite suddenly. She put her head down. She started crying. She was unable to continue talking." Report of Proceedings (RP) at 175. Eventually, JNS was able to tell Alie "in generalized terms what had occurred to her." RP at 175. JNS appeared relieved after telling Alie about her accusations against Juan Carlos.

JNS also told her grandmother, Shelly Thomas, about the accusations and that Juan Carlos had put his hands down her pants and fondled her private parts. Additionally, JNS described the incidents with Vancouver Police Sergeant Barbara Kipp. JNS told Kipp that Juan Carlos inappropriately touched her on two separate occasions, and she showed Kipp the manner in which Juan Carlos touched her by demonstrating on her fingers. Based on these accusations, the State charged Juan Carlos by second amended information with two counts of first degree child molestation.

Before trial, the State sought to exclude any testimony that Katrina had found explicit photographs of Thomas performing sexual acts that were contained on a cell phone in JNS's backpack while staying at the Madrazos' home. Defense counsel argued that testimony about

---

[2] This opinion refers to the juvenile victim by her initials to protect her privacy interests. General Order 2011-1 of Division II, *In Re The Use Of Initials Or Pseudonyms For Child Witnesses in Sex Crimes Cases*.

the alleged photographs was relevant to show (1) why JNS's visits with the Madrazos had stopped and (2) to explain JNS's precocious knowledge of sexual matters apart from the allegations against Juan Carlos. The trial court asked defense counsel whether there was any evidence that JNS had viewed these photographs. Defense counsel admitted that there was no evidence that JNS had viewed the photographs apart from her possession of the cell phone. The trial court ruled that it would provisionally grant the State's motion to exclude evidence of the alleged photographs under ER 401 and ER 403, noting that "if the evidence comes in, and if the situation warrants it, then the Court will reconsider that ruling." RP at 76.

At trial, defense counsel asked Thomas on cross-examination whether she remembered a conversation with the Madrazos about photographs found on her cell phone, and the State objected. The trial court sustained the State's objection, noting that defense counsel's question was outside the scope of direct examination and that its provisional pretrial ruling remained in place unless and until defense counsel properly presented evidence warranting admission of the cell phone photograph evidence. Defense counsel again attempted to present evidence of the alleged photographs during Katrina's cross-examination through an offer of proof outside the jury's presence.

During the offer of proof, it was established that (1) Katrina found Thomas's cell phone in JNS's backpack during JNS's visit at his home, (2) the cell phone contained photographs of Thomas engaged in sexual acts, (3) the Madrazos did not discuss the photographs with Thomas or JNS, (4) the Madrazos decided to place the cell phone in a cupboard inaccessible to JNS, (5) the Madrazos never returned the cell phone to Thomas, (5) the Madrazos had no knowledge of whether JNS had viewed or knew how to access the photographs, and (6) as a result of finding the photographs, JNS's visits became less frequent for a period of time but did not end entirely.

3

After the offer of proof, the trial court asked defense counsel to explain the materiality of the proffered evidence. Defense counsel responded:

> Well, Your Honor, the issue is precocious knowledge of the child. The materiality is, you know, the argument you get frequently in these kind of cases is where would the child learn about that kind of behavior, and the answer is—is by seeing it or viewing it. It can be seen on commercials on TV. It can be seen in television and motion picture shows. In this case, it could have been seen on the cell phone.
> . . . .
> It's for precocious knowledge, Your Honor. I mean, that's what—that's what the argument is all about is precocious knowledge. If the State is going to waive the precocious knowledge argument and say but for Mr. Madrazo molesting the child, fine. Then I don't need it.
> . . . .
> But if [the State] is going to make that argument, then I think I'm entitled to introduce this event.

RP at 231-33. The trial court ruled that it would adhere to its pretrial ruling, noting that the evidence was not relevant under ER 401 and, in the alternative, that any relevance was substantially outweighed by the prejudicial nature of the evidence under ER 403.

JNS testified at trial that she had twice awakened at the Madrazos' home to Juan Carlos laying behind her with his hands down her pajamas and on her vagina. JNS stated that on one of the occasions, she had told Juan Carlos to stop and that he complied. JNS also testified that on the morning following one of the incidents, Juan Carlos stated that she "was really nice last night. She had manners." RP at 257. Several witnesses testified at trial that JNS's behavior changed dramatically after her disclosure, stating that JNS began wetting her bed more frequently, gained weight, became withdrawn and angry, and would "freak out" in public if she saw someone resembling Juan Carlos. RP at 285.

The jury returned verdicts finding Juan Carlos guilty of two counts of first degree child molestation, and it returned special verdicts finding that he used his position of trust to facilitate the commission of both offenses. Juan Carlos appeals his convictions.

ANALYSIS

I. RIGHT TO PRESENT A DEFENSE

Juan Carlos contends that his due process right to present a defense was violated by the trial court's ruling excluding evidence that Katrina had found explicit photographs of Thomas on a cell phone contained in JNS's backpack. We disagree.

A defendant in a criminal trial has a constitutional right to present a defense. *State v. Rehak*, 67 Wn. App. 157, 162, 834 P.2d 651 (1992). "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973).

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Washington v. Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967). However, a criminal defendant's right to present a defense is subject to an important limitation: a defendant seeking to present evidence must show that the evidence is at least minimally relevant to a fact at issue in the case. *State v. Jones*, 168 Wn.2d 713, 720, 230 P.3d 576 (2010). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401.

If the defendant establishes the minimal relevance of the evidence sought to be presented, the burden shifts to the State "to show the evidence is so prejudicial as to disrupt the fairness of the fact-finding process at trial." *State v. Darden*, 145 Wn.2d 612, 622, 41 P.3d 1189 (2002). A

trial court must then balance "the State's interest to exclude prejudicial evidence . . . against the defendant's need for the information sought," and may exclude such evidence only where "the State's interest outweighs the defendant's need." *Darden*, 145 Wn.2d at 622.

Juan Carlos argues that evidence of the photographs he found on a cell phone in JNS's backpack was relevant to provide a reason for her precocious knowledge of sexual activity and, thus, was crucial for the jury's determination of JNS's credibility. Juan Carlos also argues that evidence regarding the photographs was relevant to show an alternative reason for JNS's reduced visits with the Madrazos apart from the fact of molestation. On both points, we disagree.

Evidence providing a reason for a child-victim's precocious knowledge of sexual activity may be admissible "'to rebut the inference [the child] would not know about such sexual acts unless [he or she] had experienced them with defendant.'" *State v. Kilgore*¸ 107 Wn. App. 160, 179-80, 26 P.3d 308 (2001), *aff'd*, 147 jWn.2d 288 (2002) (alteration in original) (quoting *State v. Carver*, 37 Wn. App. 122, 124, 678 P.2d 842 (1984)). However, here the State neither presented evidence nor argued at closing that JNS gained precocious knowledge of sexual activity through Juan Carlos's illicit conduct. Absent this evidence or argument, evidence of the alleged photographs contained on a cell phone found in JNS's backpack was not relevant to rebut the inference that she gained such precocious knowledge through Juan Carlos's illicit conduct. Accordingly, the trial court did not violate Juan Carlos's right to present a defense by denying admission of the evidence on this basis.

Regarding the relevance of the proffered evidence to show an alternative reason for JNS's reduced visits with the Madrazos, defense counsel clearly abandoned this argument at trial when he argued that the evidence was relevant solely to show JNS's precocious knowledge. Moreover, JNS's reduced visits with the Madrazos was not a fact of consequence at trial as there

was no evidence presented that her visitations had declined after the molestation incidents and prior to her disclosures. Thus, even if defense counsel did not abandon his argument that the evidence was relevant for this purpose, he did not lay the proper foundation for admission of the evidence on this basis. For these reasons, the trial court did not err by excluding the photographs on the cell phone.

## II. SAG

Juan Carlos appears to argue in his SAG that his defense counsel was ineffective for failing to call his witnesses to testify at trial and for failing to call the nurse who examined JNS to testify at trial. On both points, we disagree.

To demonstrate ineffective assistance of counsel, Juan Carlos must show (1) that his defense counsel's conduct was deficient and (2) that the deficient performance resulted in prejudice. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). To show prejudice, Juan Carlos must show a reasonable probability that, but for counsel's purportedly deficient performance, the outcome of the trial would have differed. *Reichenbach*, 153 Wn.2d at 130. "When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009).

With regard to his claim that defense counsel was ineffective for failing to call requested witnesses, there is nothing in the record showing that Juan Carlos had identified potential defense witnesses to defense counsel. Accordingly, this issue concerns a matter outside the record that we do not consider on direct review. *See State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995) (Where ineffective assistance of trial counsel is raised on direct review, reviewing court will not consider matters outside the trial record; a personal restraint petition is the appropriate means of having the reviewing court consider matters outside the record.).

7

With regard to defense counsel's decision to not call JNS's treating nurse, we note that the decision to call witnesses is generally a matter of trial strategy that cannot form the basis for an ineffective assistance of counsel claim. *State v. Jones*, 33 Wn. App. 865, 872, 658 P.2d 1262 (1983) (citing *State v. Thomas*, 71 Wn.2d 470, 472, 429 P.2d 231 (1967); *State v. Floyd*, 11 Wn. App. 1, 2, 521 P.2d 1187 (1974)). Further, Juan Carlos cannot demonstrate prejudice on this record, because the record does not reveal how the treating nurse would have testified had he or she been called to do so. Accordingly, we do not further address this claim.

Juan Carlos also appears to argue in his SAG that the prosecutor committed misconduct by charging him with crimes that he did not commit. This argument, however, is not sufficiently developed to merit judicial review. *See* RAP 10.10(c) ("[A]ppellate court will not consider a defendant's [SAG] if it does not inform the court of the nature and occurrence of alleged errors."). Accordingly, we do not further address it. We affirm Juan Carlos's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen, A.C.J.

BJORGEN, A.C.J.

We concur:

MELNICK, J.

SUTTON, J.

8