# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50037-0-II |
| Appellant, | |
| v. | |
| MASON BLAIR | PUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — The State charged Mason Blair in juvenile court with rape in the second degree of another juvenile, EF.  Blair and EF both testified at trial.  The defense attempted to cross-examine EF if, prior to accusing Blair of rape, she knew Blair had a criminal history of sexual crimes.  The trial court allowed limited cross-examination on this topic.  On appeal, Blair argues that the trial court violated his constitutional right to present a defense and to confront witnesses by limiting cross-examination.[1]  We affirm.

## FACTS

### I. THE INCIDENT

On April 30, 2016, Blair and his female cousin KA each invited a friend to join them for a sleepover at their grandmother's house.  Blair brought his male friend BS; KA brought her female

---

[1] Blair also argues that we should remand the case to the trial court for entry of written findings of fact and conclusions of law.  At the time Blair filed his brief with this court, the trial court had not entered written findings and conclusions.  Since that time, this alleged error has been cured and we need not address it.  *State v. Alvarez*, 128 Wn.2d 1, 19, 904 P.2d 754 (1995).

friend EF. EF had a boyfriend, who was not present. The four teens spent the evening together. Around midnight, the two girls went to bed in KA's room and the two boys went to bed in Blair's room.

Later in the night, the boys entered KA's room and told EF to leave so that KA and BS could spend time together. At this point EF's and Blair's versions of what happened diverged.

A.      EF's Testimony

Per EF, she went to Blair's room and laid on the bed. Blair entered, sat next to EF, attempted to kiss her, and asked EF to have sex with him. EF refused, saying "No. I have a boyfriend." 1 Report of Proceedings (RP) at 134.

EF testified that Blair then held her down on the bed, removed her leggings, and raped her. Blair ignored her repeated requests that he "stop" and "get off [of her]." 1 RP at 28; 1 RP at 134-36. Eventually, EF pushed Blair off with her knee and left the room. EF and KA left the house shortly thereafter. EF went to the hospital, where she received a sexual assault examination.

B.      Blair's Testimony

Blair claims that while lying next to EF on the bed, he and EF "shared a mutual kiss" that lasted until Blair attempted to remove EF's pants. 2 RP at 192. EF stopped him, removed the pants herself, and laid back on the bed. They then had intercourse. Blair stated that EF soon became nervous Blair's grandmother would come in. She insisted they stop, and they did. Blair initially denied that EF ever told him "no" or "stop." 2 RP at 193. In a later statement, Blair acknowledged that after intercourse began EF told him to "stop" and "get off" because she was afraid they would be caught. 2 RP at 197, 215. Blair told EF to "just let it happen." 2 RP at 215.

II.     PROCEDURAL HISTORY

The State charged Blair with rape in the second degree by forcible compulsion. The matter proceeded to trial.

Prior to the events giving rise to this case, Blair had two adjudications for sexual crimes, one count of indecent liberties and one count of attempted rape of a child in the first degree. At the time of the sleepover, Blair was serving a Special Sex Offender Disposition Alternative (SSODA) sentence for these convictions. The court did not admit any direct evidence of prior convictions at trial. However, trial testimony established that Blair was on probation, that he had at least one prior offense that was sexual in nature, and that EF knew why Blair was on probation.

During EF's cross-examination, Blair attempted to elicit testimony that EF knew about his criminal history prior to accusing him of rape. The following exchange occurred:

> [Defense]: Okay. And while you were there you learned that [Blair] was on probation, correct?
> [EF]: Yes.
> [Defense]: And you learned that [Blair] had a history of sexual offenses?
> [Prosecutor]: Objection. Again, beyond the scope of direct.
> THE COURT: Sustained.
> [Defense]: Did you learn what [Blair] was on probation for?
> [EF]: Yes.
> [Prosecutor]: Objection. Beyond the scope of the direct.
> [Defense]: She specifically answered that question, and it was not objected to.
> THE COURT: I'll allow the last answer to stand.
> [Defense]: Thank you.
> THE COURT: I'll sustain the objection to any further inquiry in this area.
> [Defense]: Okay.

1 RP at 145-46.

In closing argument, the prosecutor argued that EF's testimony was more credible than Blair's, and that the State had proved every element of rape in the second degree beyond a reasonable doubt. Blair primarily argued that the State had failed to prove forcible compulsion beyond a reasonable doubt. Blair also argued actual innocence, suggesting that EF falsely accused Blair of rape to avoid being caught cheating on her boyfriend and because she believed Blair's criminal history made her accusation more believable.

The trial court adjudicated Blair guilty of rape in the second degree. It entered findings of fact and conclusions of law. Acknowledging that the ruling turned largely on credibility, the trial court found EF's version of events more credible. The trial court did not consider Blair's criminal history. Blair appeals.

ANALYSIS

Blair contends the trial court violated his constitutional right to present a defense and to confront witnesses by limiting his cross-examination of EF. We disagree.

I.    STANDARD OF REVIEW

The confrontation clause of the Sixth Amendment to the United States Constitution guarantees the right of a criminal defendant "to be confronted with the witnesses against him." U.S. CONST. amends. VI. and XIV. Similarly, article I, section 22 of the Washington Constitution guarantees the right of a defendant to "meet the witnesses against him face to face." Alleged violations of constitutional rights are generally reviewed de novo. *State v. Tyler*, 138 Wn. App. 120, 126, 155 P.3d 1002 (2007).

Additionally, criminal defendants have a constitutional right to present a defense. U.S. CONST. amends. V, VI, XIV; WASH. CONST. art. I, § 3, 22; *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). However, this right and the right to confrontation

are not absolute. *State v. Arredondo*, 188 Wn.2d 244, 266, 394 P.3d 348 (2017). It does not extend to irrelevant or inadmissible evidence. *State v. Wade*, 186 Wn. App. 749, 763-64, 346 P.3d 838 (2015). "The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988). The defendant's right to present a defense is subject to "established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers*, 410 U.S. at 302; *State v. Cayetano-Jaimes*, 190 Wn. App. 286, 296, 359 P.3d 919 (2015).

We review the right of confrontation involving a limitation on the scope of cross-examination for an abuse of discretion. *State v. Lee*, 188 Wn.2d 473, 486, 396 P.3d 316 (2017). The "scope of such cross examination [remains] within the discretion of the trial court." *State v. Russell*, 125 Wn.2d 24, 92, 882 P.2d 747 (1994). Therefore, when a trial court allows cross-examination but exercises its discretion to limit the scope of questioning, courts have instead applied the more deferential abuse of discretion standard. *Arredondo*, 188 Wn.2d at 265-66.

In *State v. Darden*, the court clarified, "Although the dispositive issue before us concerns the confrontation clause, ultimately we are asked to review the trial court's ruling on the admissibility of [evidence]," which is" reviewed for abuse of discretion." 145 Wn.2d 612, 619, 41 P.3d 1189 (2002). Similarly, a trial court's limitation of the scope of cross-examination will not be disturbed unless it is the result of manifest abuse of discretion. *Darden*, 145 Wn.2d at 619; *State v. Campbell*, 103 Wn.2d 1, 20, 691 P.2d 929 (1984). As to the right to a fair trial, "[a]llegations that a ruling violated the defendant's right to a fair trial does not change the standard of review." *State v. Dye*, 178 Wn.2d 541, 548, 309 P.3d 1192 (2013).

5

A manifest abuse of discretion occurs when the trial court's exercise of discretion is "manifestly unreasonable or based upon untenable grounds or reasons." *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995). Even when an appellate court disagrees with the trial court, we will not reverse unless the court abused its discretion. *Dye*, 178 Wn.2d at 548; *In Re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

The legal principles from the above-cited cases can be summarized as follows. We first look to see if the trial court abused its discretion in excluding evidence or limiting cross-examination. If there is no abuse of discretion, the inquiry ends because there is no error. If the trial court does abuse its discretion, then we take the next step and review de novo the claim that a constitutional right has been violated. We do not, however, review the court's evidentiary ruling de novo. Only the claimed violation of a constitutional right is reviewed de novo.

As we discuss below, in our case, the trial court did not abuse its discretion in making an evidentiary ruling. Therefore, it is distinguishable from *Darden*, *Jones*, and *Lee*.[2]

In *Darden*, the trial court abused its discretion by excluding evidence. The State conceded the error which is why the court had to further analyze whether or not the defendant's constitutional claim had merit. 145 Wn.2d at 618. In our case, unlike in *Darden*, the trial court did not abuse its discretion in its evidentiary ruling.

In *State v. Jones*, 168 Wn.2d 713, 721-22, 230 P.3d 576 (2010), the trial court abused its discretion by misapplying the law. It excluded evidence under the rape shield law, RCW 9A.44.020. *Jones*, 168 Wn.2d at 721-22. Because of this determination, the court in *Jones*

---

[2] Like the concurrence, we recognize that we are obligated to follow the Washington State Supreme Court's rulings and that this highest court resolves differences that arise in the Court of Appeals. *In re Pers. Restraint of Arnold*, ___ Wn.2d, ___, 410 P.3d 1133, 1134 (2018). We also recognize it is the role of a judge to analyze and synthesize the law.

examined the right to present a defense claim. In reversing, the court concluded that by excluding relevant evidence, the trial court prohibited the defendant from presenting his "entire defense." *Jones*, 168 Wn.2d at 721. This error resulted in a Sixth Amendment violation. *Jones*, 168 Wn.2d at 721

Similarly, in *Lee*, the Court of Appeals concluded that the trial court abused its discretion in making an evidentiary ruling. 188 Wn.2d at 484. It did not allow the defendant to specify on cross-examination that the victim had previously made a false accusation of rape. *Lee*, 188 Wn.2d at 484. The defense could, however, ask if the victim had previously made a false accusation. Neither Lee nor the State sought discretionary review of this issue; therefore, the Supreme Court expressed no opinion on whether the trial court committed evidentiary error. *Lee*, 188 Wn.2d at 485. Instead, it accepted the fact that evidentiary error existed, i.e. that the court had abused its discretion, and, therefore, examined de novo the claim that Lee's right to confrontation had been violated. *Lee*, 188 Wn.2d at 487. It then reviewed the confrontation violation argument de novo. *Lee*, 188 Wn.2d at 487-88.

*Darden*, *Jones*, and *Lee* are factually distinguishable from our case because unlike in those cases, the trial court here did not abuse its discretion. It did not commit evidentiary error by limiting the scope of cross-examination.

Once there is a determination that the trial court did not abuse its discretion, we end the inquiry because there is no error.

In *State v. Clark*, 187 Wn.2d 641, 647, 389 P.3d 462 (2017), the trial court excluded expert testimony because the defendant did not claim diminished capacity. The court ruled that as a matter of law, the expert testimony was not relevant because, "expert opinion testimony that a defendant has a mental disorder that impaired the defendant's ability to form a culpable mental

state is, by definition, evidence of diminished capacity. And where, as here, the defense does not plead diminished capacity, such testimony is properly excluded." *Clark*, 187 Wn.2d at 653. Likewise, the court concluded that the testimony was not admissible to rebut the State's mens rea evidence. *Clark*, 187 Wn.2d at 649-50. In other words, the trial court did not abuse its discretion by correctly applying the law to exclude irrelevant testimony. The court stated, "The trial court correctly recognized that and properly excluded [the evidence]." *Clark*, 187 Wn.2d at 655-56. This language demonstrates that the trial court did not abuse its discretion.

More recently, in *State v. Lile*, 188 Wn.2d 766, 782-84, 398 P.3d 1052 (2017), the defendant alleged that the exclusion of evidence aimed at rebutting an assault victim's peaceful character violated his right to confrontation. The court utilized an abuse of discretion standard of review in stating, "We need not agree with the trial court's decision for us to affirm that decision. We must merely hold the decision to be reasonable." *Lile*, 188 Wn.2d at 782. Moreover, the court stated, "We do not make our own relevancy determination." *Lile*, 188 Wn.2d at 784. The court further held, "While this is perhaps a close call, we cannot say the trial court abused its discretion in limiting Lile's cross-examination of [the victim]." *Lile*, 188 Wn.2d at 784. The court ended its inquiry at this point.

When a defendant argues that an adverse evidentiary ruling violates the right to a fair trial or the right to confrontation, it does not change the standard of review. If the trial court did not abuse its discretion, the inquiry ends. There is no error. If the trial court erred in its evidentiary ruling, then we review the constitutional claim de novo.

II.     NO ABUSE OF DISCRETION

In a bench trial, the judge sits as both the arbiter of law and the finder of fact. *State v. Read*, 147 Wn.2d 238, 245, 53 P.3d 26 (2002). In these dual capacities, a judge is often required

to have knowledge of inadmissible evidence. *Read*, 147 Wn.2d at 245. A judge must know what the evidence consists of prior to ruling it inadmissible; however, as the finder of fact, the judge must eliminate knowledge of inadmissible evidence from his or her determination of the facts. *Read*, 147 Wn.2d at 245. We presume the trial judge did not consider inadmissible evidence in rendering the verdict. *State v. Miles*, 77 Wn.2d 593, 601, 464 P.2d 723 (1970).

The rules of evidence require trial courts to manage the "mode and order" of witness testimony in order to ensure that testimony is "effective for the ascertainment of the truth." ER 611(a). As relevant to this case, ER 611 states:

> **(a) Control by Court**. The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

> **(b) Scope of Cross Examination.** Cross examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination.

Under ER 611(b), "matters affecting the credibility of the witness" are generally within the scope of cross examination. Nevertheless, trial courts retain discretion to control the exact scope of questioning. *Darden*, 145 Wn.2d at 620-21. When cross-examination seeks to impeach a witness on the basis of credibility, "the evidence sought to be elicited must be material and relevant to the matters sought to be proved and specific enough to be free from vagueness." *State v. Jones*, 67 Wn.2d 506, 512, 408 P.2d 247 (1965).

During EF's cross-examination, the trial court allowed EF to state that before accusing Blair of rape, she knew that he was on probation and that she knew the crimes for which he was

on probation. The court disallowed Blair from asking whether EF knew Blair's probationary status was due to his "history of sexual offenses." 1 RP at 145.[3]

In making this evidentiary ruling, the trial court did not abuse its discretion. While cross-examination that attacks the credibility of a witness is generally permitted, this generality does not deprive trial courts of their discretion to control the scope of questioning. ER 611(b); *Darden*, 145 Wn.2d at 620.

At the time of the trial court's evidentiary ruling, Blair had not explained the purpose behind his questioning, mentioned credibility or impeachment, or connected the question to Blair's theory of the case. Even if defendants are generally given wide latitude when cross-examining witnesses, the trial court here did not abuse its discretion by limiting the scope of cross-examination.

Because the trial court did not abuse its discretion, no error occurred and we need not inquire any further into whether Blair's constitutional rights to present a defense and to confront witnesses were violated.

We affirm.

_____
Melnick, J.

I concur:

_____
Lee, A.C.J.

---

[3] We note that on appeal, Blair argues that he wanted to use the convictions to impeach the victim's credibility; however, at trial, he completely failed to make this connection for the trial court. At trial, Blair made no argument in response to the prosecutor's objection, other than to assert the question was within the scope of direct. ER 103.

WORSWICK, J. (concurring) — I agree with the majority's resolution of this case because Mason Blair's constitutional rights were not violated. Blair had a fair opportunity to defend against the State's allegations, rendering his trial fundamentally fair. I write separately because I believe the majority's standard of review discussion is in conflict with *State v. Jones*, 168 Wn.2d 713, 230 P.3d 576 (2010), and other Washington Supreme Court cases specifically examining a criminal defendant's constitutional right to present a defense.

Washington Supreme Court cases reviewing an evidentiary decision in the context of a claimed violation of the right to present a defense have described the standard of review in various ways. On the one hand, we are instructed to review these trial court decisions de novo. *Jones*, 168 Wn.2d at 719. On the other hand, we are instructed to review the trial court's evidentiary rulings for an abuse of discretion. *State v. Clark*, 187 Wn.2d 641, 648, 389 P.3d 462 (2017). More recently, in a case examining confrontation rights, we were instructed to review the trial court's limitation on a defendant's cross-examination of a witness for a manifest abuse of discretion. *State v. Lile*, 188 Wn.2d 766, 782, 398 P.3d 1052 (2017).

The United States Supreme Court, in addressing the interplay between the rules of evidence and a defendant's right to present a defense, has held that state rules resulting in the exclusion of a defendant's proffered evidence are constitutional unless they "infringe[] upon a weighty interest of the accused" and are "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *United States v. Scheffer*, 523 U.S. 303, 308, 118 S. Ct. 1261, 140 L. Ed. 2d 413 (1998) (quoting *Rock v. Arkansas*, 483 U.S. 44, 56, 107 S. Ct. 2704, 97 L. Ed. 2d 37 ((1987)). The application of *Clark* and *Scheffer* leads reviewing courts to give considerable discretion to a trial court's evidentiary decision.

Thus, the majority is correct that trial courts are granted considerable discretion in making evidentiary decisions. Majority at 5. However, reviewing the trial court's decision merely for an abuse of the trial court's discretion does not fulfill our duty to address constitutional claims.

In these types of cases, our Supreme Court considers constitutional concepts in determining abuse of discretion. For example, in *State v. Iniguez*, 167 Wn.2d 273, 217 P.3d 768 (2009), when discussing a disagreement over the standard of review of a trial court's continuance and severance decision, the court stated:

> Both sides are, in a sense, correct. It is true that we review the denial of a severance motion for an abuse of discretion. Similarly, we review a decision to grant or deny a continuance for an abuse of discretion. However, a court "necessarily abuses its discretion by denying a criminal defendant's constitutional rights." And we review de novo a claim of a denial of constitutional rights.

167 Wn.2d at 280 (citations omitted) (quoting *State v. Perez*, 137 Wn. App. 97, 105, 151 P.3d 249 (2007)). It seems appropriate here that the trial court's evidentiary decisions—and our review of those decisions—should also consider the defendant's constitutional rights.

Appellants in criminal cases frequently frame their arguments in constitutional terms and then insist on de novo review of every step taken by a trial court. This is unworkable because de novo review of evidentiary decisions made by the trial court, considering only the defendant's right to a fair opportunity to defend against the State's accusations, has the potential to eviscerate evidentiary rules developed over several centuries. But a review for mere abuse of discretion, without any consideration of the defendant's constitutional rights, veers too far in the opposite direction. The rules of evidence should not be applied "mechanistically to defeat the ends of justice." *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973); *see also United States v. Solomon*, 399 F.3d 1231, 1239 (10th Cir. 2005).

We are bound to follow the express decisions of our Supreme Court. *1000 Virginia Ltd. P'ship v. Vertecs Corp.*, 158 Wn.2d 566, 590, 146 P.3d 423 (2006). We should not apply a mere abuse of discretion standard of review in contravention of express decisions to the contrary.

Worswick, J.