# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  50373-5-II |
| Respondent, | |
| v. | |
| JEREMY DAVID LIEBICH, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. —Jeremy Liebich appeals from his convictions of four counts of first degree child rape, first degree child molestation, and attempted first degree child molestation, asserting (1) the State failed to present sufficient evidence in support of his convictions, (2) the trial court erred by admitting hearsay statements under ER 803(a)(4), (3) the trial court violated his right to present a defense by excluding certain evidence, (4) the trial court erred by failing to grant his CrR 7.4 motion for arrest of judgment and CrR 7.5 motion for a new trial, and (5) cumulative error denied his right to a fair trial.  We affirm.

## FACTS

Liebich is the father of JL,[1] who was born in December, 2004.  April Mason is the mother of KS, who was born in March 2005.[2]  Liebich and Mason married on November 14, 2009.

---

[1] We use the minor victims' initials to protect their privacy.  Gen. Order 2011-1 of Division II, *In re the Use of Initials or Pseudonyms for Child Witnesses in Sex Crime Cases* (Wash. Ct. App.), http://www.courts.wa.gov/appellate_trial_courts/.

[2] In addition to KS, Mason had three other children prior to her marriage with Liebich; Liebich and Mason had one child together during their marriage.

Liebich and Mason lived at several residences during their marriage, all located in Clark County.

JL moved in with Liebich and Mason in February 2011; JL had previously been living with her

mother, Cindy Strong, in California.  JL shared a bedroom with KS during the time that she lived

with Liebich and Mason at different residences.

On multiple occasions during the marriage, Mason would wake up at night and find that

Liebich was not in their bed.  Mason would find Liebich either in the garage or in bed with JL or

KS.  When Mason asked why he was in the girls' bedroom, Liebich would tell her that one of the

girls had a nightmare and he was helping her fall back asleep.  Mason and Liebich separated and

moved into their own apartments in December 2014.  Liebich and JL lived alone together in the

apartment for a few months.  In the summer of 2015, Liebich and JL moved into an apartment

with Jamie Anselm, Anselm's six children, and Anselm's mother.

On April 22, 2016, Liebich and JL went to Mason's apartment.  JL asked Mason if they

could speak privately, and the two went to a bedroom.  JL disclosed to Mason that Liebich had

been sexually abusing her.  After the disclosure, Mason asked Liebich if JL could stay for the

weekend, and Liebich agreed.  Mason did not contact police or Child Protective Services (CPS)

but mentioned JL's disclosure to other adults.  After the weekend, JL briefly returned to

Liebich's home before being taken into CPS custody on April 27, 2016.

Sometime shortly after JL had disclosed Liebich's sexual abuse to Mason, Mason was

driving with her oldest daughter and KS in the car.  Mason told her daughters that she had seen

something on social media about a girl being sexually abused and that she hoped they would tell

her if something like that happened to them.  Mason's oldest daughter responded, "Yes, mom,

eww, I would never have any—I would always tell you." Report of Proceedings (RP) at 516.

KS began crying and later disclosed that Liebich had sexually abused her. She disclosed the abuse by writing the accusation on a piece of paper, which Mason later gave to authorities. As with JL's disclosure, Mason did not call the police or CPS but told other adults about the disclosure. CPS contacted Mason about the disclosures on April 26, 2016; Mason did not know who reported the allegations.

On May 16, 2016, the State charged Liebich with four counts of first degree child rape for his alleged conduct against JL and charged Liebich with first degree child molestation and attempted first degree child molestation for his alleged conduct against KS. The State further alleged the aggravating factor that Liebich's four counts of first degree child rape "was part of an ongoing pattern of sexual abuse of the same victim under the age of eighteen years manifested by multiple incidents over a prolonged period of time." Clerk's Papers (CP) at 3-4.

Before trial, the State moved to admit hearsay statements made by JL and KS to child abuse pediatrician Dr. Kimberly Copeland under ER 803(a)(4), the medical diagnosis or treatment hearsay exception. The trial court held a hearing to determine the admissibility of JL and KS hearsay statements. At the evidentiary hearing, Copeland testified that she obtains a comprehensive medical history from all the patients referred to her for the purpose of determining a patient's course of treatment. Copeland stated that the identity of a child's suspected abuser is relevant to her medical examination because

> I need to know first and foremost about the child's ongoing safety, if they're still
> in contact with the person that has been involved in the allegations. I'm also
> interested in knowing the age of the person that is involved in the allegations

3

because that can have effects both on potential exam findings and injury.  It can also have effect on the likelihood of transmission of infection.

RP at 33-34.  Copeland testified that she conducted a sexual assault examinations on JL and KS in May 2016, when both JL and KS were eleven years old.  Copeland further testified that she followed her standard procedures during both examinations, which included making audio recordings of her interviews with the patients.  The audio recordings of JL's and KS's interviews with Copeland were played for the trial court.  Following argument, the trial court ruled that the statements made on the audio recordings were admissible under ER 803(a)(4)'s medical hearsay exception.

At trial, JL testified that Liebich repeatedly abused her sexually from the time she was four or five years old while living in California and continuing until a few days before she was removed from his care by CPS.  JL could not recall a specific instance of abuse occurring in the first house in which she lived with Liebich and Mason in Washington.  JL stated that she remembered Liebich sexually abusing her about twice a week in the second house in which she lived with him and Mason.  The State asked JL to think about and describe one specific instance in which Liebich sexually abused her in that house.  JL stated that Liebich came into her bedroom late at night, entered her bed, pulled down her pants and underwear, pulled down his underwear, and penetrated her vagina with his penis.

JL testified that Liebich would also repeatedly abuse her sexually in the bathroom of that same house.  Liebich would signal for her to follow him to the bathroom of the master bedroom by gesturing with his hand or cocking his head to the side.  Liebich would then start the shower, position JL on her hands and knees, and penetrate her vagina with his penis.  JL described a

specific instance in which this had occurred. JL further testified that Liebich would repeatedly abuse her sexually in the master bedroom of that same house. JL described a specific instance when Liebich penetrated her vagina with his penis while in the master bedroom.

JL stated that Liebich raped her more frequently after he separated with Mason and the two lived alone in an apartment. JL described a specific instance where Liebich entered her bed and penetrated her vagina with his penis. JL testified that Liebich continued to rape her when they moved into the small apartment that they shared with Anselm and her family. JL stated that the abuse did not occur as frequently in that apartment because of the number of people living there, but she described a specific instance in which Liebich signaled for her to follow him into the bathroom, after which he penetrated her vagina with his penis. JL stated that Liebich raped her in this manner a few days before she was removed from the home by CPS.

JL testified that Liebich also penetrated her anus with his penis approximately 20 to 25 times. JL described a specific instance where this occurred in her bedroom while living in one of the homes that Liebich shared with Mason.

During cross-examination, JL testified about her desire to live with her mother in Redmond:

> [Defense counsel]: . . . Isn't it true that you were off on spring break with your mother just a week or two or three before [disclosing allegations of Liebich's abuse to Mason]?
> [JL]: I do believe so.
> [Defense counsel]: Okay. And where did your mother live at that time?
> [JL]: She lived in the same house down in Redmond.
> [Defense counsel]: Okay. And prior to spring break, had there been discussions earlier about you wanting to live with your mom?
> [JL]: Yes, there had.

[Defense counsel]: And were you and your mother trying to convince your father to let you live with him [sic]?

[JL]: With her? Yes.

[Defense counsel]: Okay. Excuse me, you're right. And were you upset when your dad said no?

[JL]: For what I recall he did not say no, actually. He said that he'd think about it. It depended on my behavior.

[Defense counsel]: Okay. So what was he proposing might happen?

[JL]: He was proposing that if I had proper behavior and I—since I was attitude [sic], I do have an attitude when it comes to my emotions, he stated if I got that straight he'd consider letting me live with my mother.

[Defense counsel]: Okay. But at that point in time you were expecting initially that you were going to get to go right away?

[JL]: Positively me being excited, yes.

RP at 475-76. Defense counsel later asked JL, "So when you drove up here with your mom, do you recall your mom disappearing?" RP at 483. The State objected on relevance grounds. Outside the presence of the jury, defense counsel argued that the fact of JL's mother abandoning her was relevant because

> part of the reason that her mother abandoned her, so to speak, was that she was running off with an individual who's a sex offender, registered sex offender, and had brought him into the home with my client and his wife and their kids, and then when she was told the situation, she apparently took off with him and disappeared and left [JL] behind. So this gets back to some of the issues relative to this case, from our perspective.

RP at 484. The trial court sustained the State's objections, ruling that JL's mother's abandonment and prior relationship with a registered sex offender was irrelevant to JL's motivation to fabricate allegations against Liebich and would be confusing to the jury.

KS testified about specific instances in which Liebich sexually abused her. KS stated that she was about 5 years old the first time Liebich sexually abused her. KS said that Liebich entered her bed late at night, pulled her on top of him, and put his hand down her pants and under

6

her underwear, making skin to skin contact. KS also described a second instance in which Liebich entered her bed late at night and made skin to skin contact while touching her under her underwear. KS testified about another incident occurring in a different home during the day. KS stated that Liebich entered her bedroom while she was watching television, instructed her to lay down on the bed, and touched her underneath her underwear. Finally, KS described a fourth incident occurring in the same bedroom. KS stated that she was seven years old during this last incident and that she had struggled, pulled away, kept trying to pull up her pants, and told Liebich "no." RP at 360. KS testified that Liebich relented and was not able to get his hands down her pants on this occasion.

Audio recordings of Dr. Copeland's interviews with JL and KS were played to the jury over defense objection. The jury returned verdicts finding Liebich guilty of four counts of first degree child rape, first degree child molestation, and attempted first degree child molestation. The jury also returned special verdicts finding that Liebich's four convictions of first degree child rape were part of an ongoing pattern of sexual abuse of the same victim under the age of 18 manifested by multiple incidents over a prolonged period of time.

Before sentencing, Liebich filed a motion to vacate his convictions asserting that the State had failed to present sufficient evidence of sexual intercourse and sexual contact, or that any of Liebich's crimes occurred in Clark County. Liebich's motion also asserted that he was entitled to a new trial based on the trial court's admission of the audio recordings of JL's and KS's interviews with Dr. Copeland, and based on the trial court's exclusion of evidence concerning JL's mother's acts of "abandoning [JL] and running off with a sex offender thereby

resulting in the Defendant obtaining custody of [JL]."  CP at 142.  The trial court denied

Liebich's motion.  Liebich appeals from his convictions and from the trial court's denial of his

motion to vacate his convictions and for a new trial.

ANALYSIS

I. SUFFICIENCY OF THE EVIDENCE

Liebich first contends that the State failed to present sufficient evidence to support his

convictions.  Specifically, Liebiech argues that the State's evidence was insufficient for the jury

to find that he committed specific and distinct acts of first degree child rape, first degree child

molestation, and attempted first degree child molestation during the charging periods.  We

disagree.

Evidence is sufficient to support a guilty verdict if any rational trier of fact, viewing the

evidence in the light most favorable to the State, could find the elements of the charged crime

beyond a reasonable doubt.  *State v. Longshore*, 141 Wn.2d 414, 420-21, 5 P.3d 1256 (2000).

"In claiming insufficient evidence, the defendant necessarily admits the truth of the State's

evidence and all reasonable inferences that can be drawn from it."  *State v. Homan*, 181 Wn.2d

102, 106, 330 P.3d 182 (2014).  We defer to the trier of fact on issues of conflicting testimony,

credibility of witnesses, and the persuasiveness of the evidence.  *State v. Andy*, 182 Wn.2d 294,

303, 340 P.3d 840 (2014).  We view circumstantial evidence and direct evidence as equally

reliable when reviewing the sufficiency of evidence in support of a conviction.  *State v.

Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).  Whether the State presented sufficient

evidence to support a conviction is a question of constitutional law that we review de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016).

A.       *First Degree Child Rape*

To convict Liebich on each count of first degree child rape as charged and instructed here, the State had to prove beyond a reasonable doubt that (1) on or about or between December 6, 2009, and May 1, 2016, he had sexual intercourse with JL; (2) JL was less than 12 years old at the time of the sexual intercourse and was not married to Liebich; (3) JL was at least 24 months younger than Liebich; and (4) the act occurred in the State of Washington.  RCW 9A.44.073. Liebich challenges only the sufficiency of evidence in support of the first element, asserting that the State presented "only unspecific generalized testimony by JL," which was insufficient for a jury to find that he committed four specific and distinct acts of first degree child rape.  Br. of Appellant at 20.  We disagree.

Where, as here, the State alleges multiple counts of sexual abuse to have occurred within the same charging period, the State's evidence must clearly delineate specific and distinct acts that occurred during the charging period.  *State v. Hayes*, 81 Wn. App. 425, 430-31, 914 P.2d 788 (1996).  We employ the three-prong *Hayes* test to determine whether an alleged victim's generic testimony about a course of sexual abuse sufficiently describes specific and distinct acts in support the defendant's convictions.  *State v. Edwards*, 171 Wn. App. 379, 402, 294 P.3d 708 (2012) (citing *Hayes*, 81 Wn. App. at 438).  Under the *Hayes* test

> the alleged victim must (1) describe the act or acts with sufficient specificity to
> allow the jury to determine what offense, if any, has been committed; (2) describe
> the number of acts committed with sufficient certainty to support each count the

prosecution alleged; and (3) be able to describe the general time period in which the acts occurred.

*Edwards*, 171 Wn. App. at 402.

Liebich concedes that the first prong of the *Hayes* test was satisfied as JL's testimony was sufficiently specific to permit the jury to determine that he had committed multiple incidents of first degree child rape. But Liebich argues that JL's testimony was insufficient to meet the second and third prongs of this test. We disagree.

Although JL testified that Liebich had repeatedly raped her from the time she was four or five up until she was removed from his home and that the rapes occurred "[m]aybe 200 times at the most," JL described six acts in detail. RP at 487. JL described three specific instances in which Liebich raped her by penetrating her vagina with his penis in the second home in which she lived with him and Mason; JL described one incident occurring in the bedroom she shared with KS, one incident occurring in the bathroom, and one incident occurring in the master bedroom. JL also described a specific instance where Liebich raped her by penetrating her anus with his penis, which occurred in JL's bedroom in one of the homes Liebich shared with Mason. JL further described two specific instances in which Liebich penetrated her vagina with his penis, one occurring in her bedroom in the apartment where she had lived alone with Liebich and the other incident occurring in the bathroom of the apartment that Liebich shared with Anselm.

Because the State charged Liebich with four counts of first degree child rape, JL's testimony regarding these six specific instances adequately "describe[d] the number of acts committed with sufficient certainty to support each of the counts alleged by the prosecution." *Hayes*, 81 Wn. App. at 438; *see also State v. Yallup*, 3 Wn. App.2d 546, 554, 416 P.3d 1250

(Victim's testimony that certain "acts occurred more than 10 times" was sufficient to meet the second prong of the *Hayes* test where the State charged defendant with two counts of first degree child rape.), *review denied*, 191 Wn.2d 1014 (2018).

JL's testimony also satisfied the third prong of the *Hayes* test as she related each of these specific six instances to locations where she had lived with Liebich, which testimony established that all of Liebich's acts occurred well within the charging period of December 6, 2009 through May 1, 2016. Mason testified that JL came to live with her and Liebich in 2011, and Vancouver Police Detective Deanna Watkins testified that CPS removed JL from Liebich's home on April 27, 2016. Accordingly, JL's testimony was sufficiently specific to meet the *Hayes* test and, thus, we hold that sufficient evidence supports Liebich's convictions on four counts of first degree child rape.

B.      *First Degree Child Molestation/Attempted First Degree Child Molestation*

To convict Liebich of first degree child molestation as charged and instructed here, the State had to prove beyond a reasonable doubt that (1) on or about or between March 30, 2010 and March 30, 2015, he had sexual contact with KS; (2) KS was less than 12 years old at the time of the sexual contact and was not married to Liebich; (3) KS was at least 36 months younger than Liebich; and (4) that the act occurred in the State of Washington. RCW 9A.44.083. And to convict Liebich of first degree child molestation as charged and instructed here, the State had to prove beyond a reasonable doubt that (1) on or about March 30, 2010 and March 30, 2015, he did an act that was [a] substantial step toward the commission of child molestation in the first degree; (2) the act was done with the intent to commit child molestation in the first

degree; (3) KS was less than 12 years old at the time of the sexual contact and was not married to the defendant; (4) KS was at least 36 months younger than Liebich; and (5) the act occurred in the State of Washington. RCW 9A.44.083; RCW 9A.28.020.

Liebich challenges only the sufficiency in support of the first element of these crimes, that he had sexual contact with KS during the charging period (first degree child molestation), and that he took a substantial step toward the commission of first degree child molestation during the charging period (attempted first degree child molestaion). Regarding these challenges, Liebich repeats his claim that the State's evidence was insufficient to show separate and distinct acts under the three-prong test established in *Hayes*. And, as with his challenge to the sufficiency of evidence in support of his first degree child rape convictions, Liebich concedes that KS's testimony was sufficient to establish the first prong of the *Hayes* test but argues that her testimony was too vague to establish the second and third prong. Again, we disagree.

Here, KS described three specific instances in which Liebich sexually molested her by placing his hand under her underwear and making skin to skin contact, and she described a fourth and final instance in which Liebich unsuccessfully attempted to place his hand under her underwear. KS testified that the first incident occurred when she was five years old, and stated that it took place at night in the bedroom she shared with JL. KS described the second incident as occurring in the same place and in a similar manner. KS described a third incident in which Liebich molested her during the daytime in a bedroom of a different house. Finally, KS described a fourth and final incident that occurred when she was seven. KS stated that the final

incident occurred in the same bedroom, but that she had struggled and told Liebich, "[S]top, no[,]" after which he got up and left. RP at 360.

KS's testimony regarding three specific instances of Liebich's sexually molesting her and one specific instance of Liebich attempting to sexually molest her was sufficient to establish the second prong of the *Hayes* test as the testimony "describe[d] the number of acts committed with sufficient certainty to support each of the counts alleged by the prosecution." 81 Wn. App. at 438; *see also Yallup*, 3 Wn. App.2d at 554. KS's testimony also established the third prong of the *Hayes* test. KS testified that she was born on March 30, 2005 and stated that the first incident occurred when she was five years old and that the final incident occurred when she was seven years old. Because KS became five years old on March 30, 2010 and became eight years old on March 30, 2013, her testimony was sufficient to establish that Liebich committed his offenses against her during the State's charging period of March 30, 2010 through March 30, 2015. Accordingly, KS's testimony was sufficiently specific to meet the *Hayes* test and, thus, we hold that the State presented sufficient evidence in support of his first degree child molestation and attempted first degree child molestation convictions.

## II. ER 803(a)(4)

Next, Liebich contends that the trial court abused its discretion in admitting JL and KS's hearsay statements to Dr. Copeland, asserting that the statements did not fall under the medical diagnosis or treatment hearsay exception of ER 803(a)(4). We disagree.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *State v. Gresham*, 173 Wn.2d 405, 419, 269 P.3d 207 (2012). A trial court abuses its discretion

when its decision is based on untenable grounds or reasons. *State v. Bessey*, 191 Wn. App. 1, 6, 361 P.3d 763 (2015).

"Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Hearsay is not admissible "except as provided by [evidentiary] rules, by other court rules, or by statute." ER 802. Statements made for medical diagnosis or treatment are admissible as exceptions to the hearsay rule under ER 803(a)(4), which provides:

> **(a) Specific Exceptions.** The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
> . . . .
> (4) *Statements for Purposes of Medical Diagnosis or Treatment.* Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

(Alteration in original.)

"A party demonstrates a statement to be reasonably pertinent [to diagnosis and treatment] when (1) the declarant's motive in making the statement is to promote treatment and (2) the medical professional reasonably relied on the statement for purposes of treatment." *State v. Williams*, 137 Wn. App. 736, 746, 154 P.3d 322 (2007).

Liebich argues that because both JL and KS were eleven years of age at the time they made their statements to Dr. Copeland, they "were almost certainly too young to understand the purpose for making the statements." Br. of Appellant at 26. In support of his argument that JL and KS were too young to understand the purpose of making their statements, Liebich relies on *State v. Florczak*, 76 Wn. App. 55, 882 P.2d 199 (1994). Liebich's reliance is misplaced.

In *Florczak*, Division One of this Court addressed a challenge to the admission of a 3-year-old victim's hearsay statements to a therapist under ER 803(a)(4). 76 Wn. App. at 64-67. The *Florczak* Court held that a child's hearsay statements may be admitted under ER 803(a)(4) even if the child declarant does not understand that the statements were necessary for medical diagnosis or treatment if "corroborating evidence supports the child's statements and it appears unlikely that the child would have fabricated the cause of injury." 76 Wn. App. 65. In *State v. Kilgore*, 107 Wn. App. 160, 183-84, 26 P.3d 308 (2001), *aff'd*, 147 Wn.2d 288, 53 P.3d 974 (2002) we explained that the additional requirement of evidence corroborating a child's hearsay statements under *Florczak* applied only to "very young children," and we rejected its application to a child who was almost 11 years old when making her statements based on her age alone. Similarly here, we reject Liebich's claim that the trial court was required to address the test set forth in *Florczak* as both JL and KS were 11 years old when making their statements to Copeland.

Moreover, contrary to Liebich's contention that "[t]he trial court made no finding about what either child understood," the record shows that the trial court clearly found that JL and KS understood that their statements were made for the purpose of medical diagnosis or treatment. Br. of Appellant at 26. In finding that JL and KS understood the purposes of making their statements, the trial court relied on the context of their conversations with Copeland, reasoning that Copeland explained the purpose of the interviews, Copeland asked JL and KS questions related to their health, 11-year-old children are old enough to understand the purpose of making statements to a medical professional, and JL and KS appeared lucid during their conversations.

Because the trial court was not required to address the test set forth in *Florczak* based on JL's and KS's age when making their hearsay statements, and because the audio recordings of JL's and KS's interviews with Copeland supported the trial court's findings that their statements were made for the purpose of medical diagnosis and treatment, the trial court did not abuse its discretion when admitting the statements under ER 803(a)(4).

### III. RIGHT TO PRESENT A DEFENSE

Next, Liebich contends that the trial court's ruling excluding evidence of Cindy Strong's (JL's mother) "prior acts of questionable parenting" violated his constitutional right to present a defense. Br. of Appellant at 26. Because Liebich's proffered evidence regarding Strong's alleged prior acts of questionable parenting was not relevant to any issue in case, we disagree.

A defendant in a criminal trial has a constitutional right to present a defense. *State v. Rehak*, 67 Wn. App. 157, 162, 834 P.2d 651 (1992). "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). But a criminal defendant's right to present a defense is not absolute; a defendant seeking to present evidence must show that the evidence is at least minimally relevant to a fact at issue in the case. *State v. Jones*, 168 Wn.2d 713, 720, 230 P.3d 576 (2010). "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401.

16

Here, Liebich fails to demonstrate that Strong's "prior acts of questionable parenting," including the accusation that Strong had abandoned JL to run off with a registered sex offender, had any tendency to make a consequential fact more or less probable than without the evidence. Br. of Appellant at 26. Liebich claims that the proffered evidence was relevant to Strong's credibility, but Strong's credibility was not at issue as she did not testify at trial and no statements made by Strong were admitted as evidence. Liebich also claims that the proffered evidence was relevant to show JL's motivation to fabricate her allegations so she could move back with her mother. We fail to see any connection between allegations of Strong's bad parenting and JL's motivation to fabricate allegations out of a desire to move back with her. Liebich elicited from JL during cross-examination that she and Strong had discussed the possibility of living together and that JL was excited by this prospect. This evidence thus supplied Liebich with the defense theory that JL fabricated allegations out of desire to move in with her mother, and exists entirely independent of any evidence regarding Strong's character. Because Liebich fails to demonstrate that evidence of Strong's character was relevant to any issue in the case, the trial court did not violate his right to present a defense by excluding it.

## IV. MOTION FOR ARREST OF JUDGMENT AND NEW TRIAL

Next, Liebich contends that the trial court erred by denying his motion for arrest of judgment under CrR 7.4 and for a new trial under CrR 7.5. We disagree.

Liebich's contention that the trial court erred in denying his post-judgment motion relies on the same arguments we rejected above; he claims that the trial court erred in denying his motion for arrest of judgment based on insufficient evidence and in denying his motion for a new

trial based on the admission of JL's and KS's hearsay statements and exclusion of evidence regarding Strong's character. Having rejected those arguments above, Liebich cannot show that the trial court erred in denying his post-judgment motions for arrest of judgment and a new trial.

## V. CUMULATIVE ERROR

Finally, Liebich contends that cumulative error denied his right to a fair trial. We disagree. The cumulative error doctrine applies when several errors occurred at the trial level, none of which alone warrants reversal, but the combined errors effectively denied the defendant a fair trial. *State v. Hodges*, 118 Wn. App. 668, 673-74, 77 P.3d 375 (2003). Because Liebich has failed to demonstrate that any error occurred at trial, the cumulative error doctrine does not apply. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

I concur:

_____
Sutton, J.

MELNICK, J. (concurring) — I agree with the majority that the trial court did not violate Jeremy Liebich's right to present a defense by excluding certain evidence. However, I disagree with the majority's analysis on this issue. Rather than using the majority's analysis, I instead believe that the correct analytical framework is specified in *State v. Blair*, 3 Wn. App. 2d 343, 415 P.3d 1232 (2018).

As *Blair* states, when a defendant alleges a violation of the right to trial based on the trial court's exclusion of evidence, the standard of review is abuse of discretion. If there is no abuse of discretion, there is no error, and the inquiry ends. If the trial court does abuse its discretion, then we take the next step and review de novo the claim that a constitutional right has been violated. *Blair*, 3 Wn. App. 2d at 351.

The majority in this case concludes the trial court did not err by excluding the proffered evidence. I agree. Because the court did not err, it did not abuse its discretion, and it did not violate Liebich's right to present a defense.

Melnick, J.