**FILED**
**SEPTEMBER 5, 2024**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III



IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Parenting and Support of: | ) ) ) | No. 39435-2-III |
| J.L.G., I.J.G., J.J.G, and J.L.G Jr. | ) ) | |
| | ) | |
| In the Matter of the Committed Intimate Relationship of: | ) ) ) | |
| N.V., | ) ) | UNPUBLISHED OPINION |
| Respondent, | ) ) ) | |
| and | ) ) | |
| J.L.G., | ) ) | |
| Appellant. | ) | |

PENNELL, J. — J.G. appeals trial court orders pertaining to a parenting plan for his two minor children. We affirm.

## FACTS

N.V. and J.G. met in 1995. Although never married, they lived together as husband and wife from 1996 until 2018. The couple has four biological children, two of whom were still minors at the time of trial.

On March 9, 2018, J.G. and N.V. executed an agreement stating J.G. would remit $20,000 to N.V. for her interest in their home located on Bench Road in Othello, Washington, and "any and all debt she may have on her credit cards and auto loan." Clerk's Papers (CP) at 410. Additionally, it was agreed that the "payment shall be considered a full and final distribution of all our joint assets and debts we have acquired during our domestic partnership." *Id.*

In May 2018, N.V. simultaneously initiated two separate actions in Adams County Superior Court through the filing of: (1) a complaint for division of property and debts in a CIR (committed intimate relationship), and (2) a petition for a parenting plan, residential schedule, and/or child support.[1] Under the CIR action, N.V. also moved to rescind the March 9, 2018, agreement due to unfairness and duress. The motion was denied without explanation. A few months later, the court entered a temporary parenting plan.

On May 7, 2021, the parties' attorneys signed and filed a set of proposed final orders and findings in the trial court. The documents included: (1) a parenting plan,

---

[1] About five months after commencement of these actions, the superior court entered an agreed order to consolidate the cases. Separately paginated clerk's papers have been transmitted to this court from the parenting/support and CIR cases. All citations to clerk's papers in this opinion are from the parenting/support case.

(2) a final order and findings for a parenting plan, residential schedule and/or child

support, (3) a final order to end the CIR, and (4) findings and conclusions for the CIR.

In the proposed final orders, the parties agreed to equal residential time with

their children, *id*. at 263, and that "[a]t this time neither party owes the other party child

support." *Id*. at 274. The parties also agreed J.G. would pay N.V. $58,000 and N.V.

would convey to J.G. her interest in the Bench road property. The proposed findings and

conclusions for the CIR stated that $58,000 represented N.V.'s "share" of the parties' real

property. *Id*. at 280. Nothing in the proposed orders stated that the $58,000 represented a

disproportionate property distribution or that this amount was intended to cover child

support.

J.G. subsequently filed a motion to present final orders. In a supporting

declaration, J.G. stated that he agreed to pay N.V. $60,000 "in lieu of child support

and interest in the house." *Id*. at 284.[2] N.V. filed a declaration disputing J.G.'s

characterization of the parties' settlement agreement. N.V. pointed out that the proposed

property distribution was not in lieu of child support. N.V. declared that the issues

of property distribution and child support were "separate and apart" and that she

---

[2] The discrepancy between the $60,000 referenced in J.G.'s declaration and the $58,000 referenced elsewhere appears to be due to the fact that J.G. made an advance payment of $2,000 to N.V. Rep. of Proc. (RP) (Sept. 20, 2022) at 19.

"never agreed" to have the property distribution agreement also cover child support.

*Id*. at 288. The trial court never signed these proposed final orders, apparently due to

the fact that there was no provision made for child support.[3]

The matter was set for trial and the parties' trial briefs reflected their opposing

positions regarding residential time and child support. N.V. asked the court to limit

J.G.'s residential time. She also asked the court to award child support even if the final

parenting plan reflected an equal division of parenting time. In his trial brief, J.G.

requested the court continue with an equal split in residential time, consistent with the

terms of existing temporary orders. J.G. also again asserted that the $58,000 transfer was

to cover both N.V.'s share of the parties' real property and child support. *Id*. at 300-01.

During opening statements at trial, J.G.'s attorney asserted the $58,000 was

intended to take care of all issues in the case. Counsel asked the court to limit the issue

at trial to "what, if any, child support should be due and owing." Rep. of Proc. (RP)

(Sept. 20, 2022) at 7. The court asked J.G.'s attorney if he was seeking "a trial on the

enforceability of the agreement." *Id*. Counsel did not directly answer this question and

instead commented that given the "agreement by the parties . . . this matter should be

---

[3] The record on review does not contain any order or hearing transcript detailing the court's decision on the May 2021 proposed orders. We rely on the parties' description of the court's ruling. *Id*. at 300; RP (Sept. 20, 2022) at 68-69.

condensed on simply the issue of the child support." *Id*. at 7-8. The trial court rejected

this request, noting it was not how the matter had been set.

There was limited evidence at trial regarding J.G.'s transfer payment. N.V.'s

mother testified the $58,000 cash transfer was for N.V.'s "part of the house." *Id*. at 19.

N.V. also agreed during her testimony that the $58,000 check was "what [she] would get

paid for [her] share of the house." *Id*. at 55. There was no testimony that the $58,000 was

intended to also cover child support. Nor was there any testimony that $58,000 was

disproportionate to N.V.'s community interest in the house.

J.G. attempted to elicit testimony during trial regarding the parties' agreement

to a 50/50 custody arrangement. N.V.'s mother testified that the parties had such an

agreement. *See id*. at 18 (explaining the parties had an unsigned agreement to share

custody of the children "every other week"). But when J.G.'s counsel attempted to

elicit testimony from N.V. about the parties' agreement as to residential time,

the trial court sustained objections to this line of questioning. The court noted there

was never a final agreement signed by the parties,[4] that evidence of settlement

communications is not admissible at trial, and that the current proceeding was not one

to enforce any existing agreement between the parties as to child custody or support that

---

[4] The May 2021 proposed final orders were signed by counsel but not the parties.

had been previously approved by the court. *Id*. at 59-60, 70. Although J.G. did not proffer any evidence suggesting the $58,000 payment was intended to also cover child support, the court noted the parties "do not have the authority themselves to agree as to child support." *Id*. at 58.

During its oral rulings at the close of trial, the court found the parties were both good parents, but they "do not communicate well." *Id*. at 158. The court recognized that the parties had been operating under 50/50 shared custody of the children through the court's temporary orders. Nevertheless, in its final orders entered on December 7, 2022, the court opted for a final parenting plan that placed the children in the primary care of N.V. The court also imposed $1,331.50 in monthly child support to be paid by J.G. CP at 358.

J.G. timely appeals.

ANALYSIS

*Scope of evidence*

J.G. contends that the trial court improperly limited the scope of trial issues and testimony by: (1) failing to consider the March 2018 agreement for payment of $20,000 and the May 2021 agreement for $58,000, and (2) disallowing evidence of N.V.'s agreement to a proposed order for equal residential time. We disagree with both claims.

We review a court's evidentiary rulings for abuse of discretion. *State v. Darden*, 145 Wn.2d 612, 619, 41 P.3d 1189 (2002). A court adequately exercises its discretion when it excludes inadmissible evidence. *State v. Blair*, 3 Wn. App. 2d 343, 352, 415 P.3d 1232 (2018). Inadmissible evidence includes irrelevant evidence. *Id*. at 352-53. It also includes evidence such as offers of settlement. ER 408.

The trial court did not abuse its discretion in limiting the evidence of the money transfers. As an initial matter, J.G. never sought to introduce the parties' agreement as to the $20,000. Thus, the issue of admissibility of that evidence has been waived. ER 103; RAP 2.5(a). As for the $58,000 transfer payment, J.G. never attempted to introduce any evidence that the intent of the transfer was to include child support. According to the record, the $58,000 was intended to facilitate a division of the parties' real property. The parties did not identify division of real property as an issue for trial. Given the lack of relevance, the trial court did not abuse its discretion in limiting testimony relating to the $58,000 transfer.

Even if J.G. had introduced evidence that the $58,000 was also intended to cover child support, this agreement would have had limited relevance. As noted by the trial court, the parties cannot agree to waive child support. *See In re Marriage of Hammack*, 114 Wn. App. 805, 808, 60 P.3d 663 (2003). "[C]hild support is held in trust by the

7

parents for the children and, hence, parents have no right to waive their children's right to that support." *Id*. Should the parties reach an agreement that a disparate property award by the court will cover child support, the court would still be obliged to determine whether the award would be a reasonable substitute for child support. *Holaday v. Merceri*, 49 Wn. App. 321, 327, 742 P.2d 127 (1987). Here, there was no evidence or proffer of evidence suggesting that the $58,000 was disproportionate to N.V.'s property interest and therefore sufficient to cover reasonable child support. Given this circumstance, any agreement as to the $58,000 would have had virtually no probative value for the court.

Nor did the trial court abuse its discretion by rejecting evidence of N.V.'s stipulation to equal residential time. We recognize the parties' "agreements" and "wishes" are relevant to a trial court's parenting plan decision. RCW 26.09.187(3)(a)(ii), (vi). And, in fact, the trial court heard evidence from N.V.'s mother indicating N.V. had agreed to a 50/50 split in residential time at some point in the past. But there was no evidence that N.V. continued to agree to this arrangement at the time of trial. The fact that N.V. may have discussed the possibility of a 50/50 split during past settlement negotiations was not admissible at trial. *See* ER 408. The trial court did not abuse its

8

discretion in rejecting evidence that N.V. had previously stipulated to an equal split in residential time.

*Parenting plan decision*

Apart from arguing that the trial court did not consider the parties' agreement, J.G. contends the court failed to appropriately weigh the seven statutory factors relevant to entry of a parenting plan. *See* RCW 26.09.187(3)(a). Specifically, J.G. argues the trial court failed to explain why it deviated from the 50/50 parenting plan that had been in place through the court's temporary orders. We find no reversible error.

A parenting plan must be determined to be in the best interest of a child after considering the statutory factors set forth at RCW 26.09.187(3)(a). *In re Marriage of Kovacs*, 121 Wn.2d 795, 801, 854 P.2d 629 (1993); RCW 26.09.184(1)(g), .002. The most important statutory factor is the first, which involves the court's consideration of "[t]he relative strength, nature, and stability of the child's relationship with each parent." RCW 26.09.187(3)(a)(i). We review a trial court's ruling with respect to a parenting plan for abuse of discretion. *In re Marriage of Littlefield*, 133 Wn.2d 39, 46, 940 P.2d 1362 (1997). Discretion is abused if it is "manifestly unreasonable or based on untenable grounds." *Kovacs*, 121 Wn.2d at 801.

Here, the trial court issued a final written order on a parenting plan that included

findings related to the factors set forth at RCW 26.09.187(3)(a). The court's written

findings focused on the fact that N.V. had served as the primary parent for the parties'

children. According to her trial testimony, N.V. was the parent primarily responsible for

tasks such as schooling and medical appointments, despite the existence of a temporary

order splitting residential time equally. J.G. disputed this testimony, but the trial court's

written findings indicate it found N.V. more credible. *See* CP at 428 (The trial court

"relied heavily on [N.V.]'s testimony at trial."). In its oral ruling, the court explained that

the parties do not "communicate well" and that it was not the court's practice to issue

50/50 parenting plans in such circumstances. RP (Sept. 20, 2022) at 158.

While the trial court's findings could have been more robust, it is apparent

that the court concluded it was not in the best interest of the children to equally split

residential time between parents who were not communicating well and who were not

sharing in parenting responsibilities under the temporary orders. This goes to the most

important statutory factor, RCW 26.09.187(3)(a)(i). The court also had a factual basis for

findings related to the remaining statutory factors: there was no competent evidence of an

agreement as to a residential schedule (RCW 26.09.187(3)(a)(ii)); N.V. had taken on

greater parenting responsibilities (RCW 26.09.187(3)(a)(iii)); the children had good

relationships with both parents and with J.G.'s girlfriend (RCW 26.09.187(3)(a)(iv), (v));

the court credited J.G.'s wishes as to the children (RCW 26.09.187(3)(a)(vi)); and J.G.

worked fulltime and sometimes overtime (RCW 26.09.187(3)(a)(vii)).

Given the deference owed to a trial court's parenting plan decision, we affirm.

*Imputation of income*

Finally, J.G. argues the trial court impermissibly imputed N.V.'s income for

purposes of child support. First, J.G. contends N.V. was sharing a home with the parties'

two adult sons at the time of trial and it was unknown whether the sons were contributing

to household finances. J.G. also argues, without explanation or citation of authority, that it

was improper for the trial court to impute N.V.'s income as minimum wage based solely

on recent health problems that prevented her from working.

J.G.'s first argument fails for lack of evidentiary support. There was considerable

testimony at trial regarding N.V.'s finances. N.V. testified that she was currently earning

$16 per hour through seasonal employment. She testified that she earned $26,822 in 2019

and $4,719 in 2020. N.V. could not recall what she earned in 2021. As of the date of trial,

N.V. had so far earned $7,749 during 2022. J.G.'s attorney cross-examined N.V. about

what she was doing to supplement her income. N.V. answered that she was using the

$58,000 transfer payment. If N.V. had been receiving any income from her adult children,

she presumably would have answered accordingly. To the extent J.G. believed N.V. was leaving out information, he had the opportunity to ask further questions. But he did not do so. Given the state of the record, it was fully appropriate for the trial court to consider N.V.'s income as confined to the evidence presented at trial.

We decline to address J.G.'s second argument as it is insufficiently developed to merit appellate review. *See West v. Thurston County*, 168 Wn. App. 162, 187, 275 P.3d 1200 (2012).

## CONCLUSION

This matter is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____
Staab, A.C.J.

_____
Fearing, J.

12